**Alfred J. TESTON**

v.

**Edward L. CAREY et al., Appellants.**

**No. 24959.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1972.

Decided May 12, 1972.

Mr. Harold H. Bacon, Washington, D. C., for appellants. Messrs. Welly K. Hopkins and Joseph T. McFadden, Washington, D. C., were on the brief for appellants.

Mr. Robert C. Handwerk, Washington, D. C., for appellee.

Before LEVENTHAL and WILKEY, Circuit Judges, and RONALD N. DAVIES,* U.S. Senior District Judge for the District of North Dakota.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

WILKEY, Circuit Judge:

This is a declaratory judgment action brought by Teston, appellee here, to compel favorable action on his pension application by the Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950.

### I.

The applicant claims to have labored 39 years in the mining industry as a coal loader, mostly as an employee of companies contributory to the Fund, in some years as a self-employed worker. Particularly relevant to this action is the established fact that from 1946 to 1958 he was steadily employed by an operator signatory to the National Bituminous Coal Wage Agreement who was making contributions to the Fund.[1]

Because of economic conditions in 1958 the plaintiff was unable to find work in the coal industry.[2] In February 1960 he went back into coal mining, op-erating a small mine with his partner, but having no employees. He initially made contributions to the Fund as a signatory operator, but ceased when he was informed that neither he nor his partner as self-employed workers would be eligible for a pension based on these contributions.

By Resolution No. 63 of 4 January 1965 the Trustees lowered the age limit for Fund pension eligibility to age 55. Learning of this, Teston (born in 1910) then ceased mining as a self-employed worker and secured employment with the Valley Coal Company, a signatory to the Agreement and contributor to the pension Fund, from October 1965 to October 1966. Under Resolution No. 63[3] the important pension requirements were that an applicant should have reached 55 years of age, completed 20 years' classified service in the bituminous coal industry, and "permanently ceased work in the coal industry imme-

---

1. Since the contributions were made on the basis of the total tonnage mined, there is no precise calculation available of the amount contributed by the operator on behalf of this prospective pensioner, although a rough approximation could be made.

2. Plaintiff asserts, and the testimony of a Mr. Palumbo concerning the records of the New Shawmut Mining Company (Deposition of Antonio J. Palumbo, pages 7–8, Record at 16) indicates, that the mine in which plaintiff had been working for the New Shawmut Mining Company—Proctor No. 3—was partially closed up in 1958 and subsequently leased out, thereby terminating New Shawmut's need for plaintiff's services.

3. Resolution No. 63 reads, in pertinent part:
   SEVENTY-EIGHTH MEETING OF THE BOARD OF TRUSTEES OF THE UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950, JANUARY 4, 1965
   *    *    *    *    *
   I. ELIGIBILITY
   A. An applicant who subsequent to February 1, 1965 permanently ceases work in the bituminous coal industry as an employee of an employer sig-natory to the National Bituminous

   Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:
   1. Attained the age of fifty-five (55) years or over at the date of his application for pension.
   2. Completed twenty (20) years' service in the coal industry in the United States, as described in paragraph II A hereof.
   3. Permanently ceased work in the coal industry immediately following regular employment for a period of at least one (1) full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, as defined in paragraph II B hereof.
   *    *    *    *    *
   II. DEFINITIONS
   B. A full year of employment.
   1. "One (1) full year as an employee" as required in paragraph I A 3 is one during which an applicant earned at least the daily base rate in effect for the year he retired, multiplied by the average number of days per year worked in the bituminous coal mines in the United States and worked in a minimum of at least twelve (12) months. These earnings must have been accumulated in the consecutive period immediately preceding permanent cessation of work. . . . .

diately following regular employment for a period of at least one full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement. . . ." Before going to work for the Valley Coal Company in 1965, the applicant Teston met all of the requirements except the last of one full year's work for a signatory employer. Although after two years' work outside the industry he had returned and had been mining coal since 1960 as either a sole operator or in partnership, this work did not serve to qualify him for a pension, as it did not meet the requirement of one full year of employment with a signatory employer immediately prior to retirement.

Appellant Trustees here attack the bonafides of Teston's employment with the signatory Valley Coal Company, arguing that the Company was set up to provide the applicant Teston with the one year's contributory employment and that he was the only employee. Granting that this arrangement was worked out by Teston in order that under the specific terms of Resolution No. 63 he could qualify for a Mine Workers Fund pension, we do not think it can be characterized as fraudulent, and under the rationale of our decision in this case it is not necessary to determine whether this particular employment fulfilled the one year's requirement under Resolution No. 63.

On completing his one year of service with Valley Coal Company in October 1966, Teston applied for pension benefits on 31 October 1966. The Trustees denied his pension application in February 1967, on the grounds that Teston was not regularly employed by an operator signatory to the Agreement for one year immediately prior to retirement and that, even if he was a bona fide employee of the Valley Coal Company, his claimed wages from Valley Coal were insufficient to qualify him under Resolu-

tion No. 63's definition of "one (1) full year as an employee." No question was raised as to his meeting other qualifications within the standards of Resolution No. 63. In July 1968 Teston filed a complaint for declaratory judgment, seeking the pension award refused him by the appellant Trustees, and after extensive discovery summary judgment for the plaintiff was granted by the trial court in October 1970.

II.

We think our two opinions in Roark v. Boyle (14 August 1970)[4] and DePaoli v. Boyle (25 June 1971)[5] determine the disposition of the case we must make here. Teston stands in the same position as DePaoli and Roark, who filed for pensions before 14 August 1970, and who were denied pensions on the basis of the signatory last employment requirement declared unlawful in *Roark*. On all material points Teston's situation is virtually identical with that of De-Paoli. Teston claims 39 years' service in the coal mining industry, DePaoli 41, thus Teston and DePaoli both admittedly met the requirement of more than 20 years' service; because of depressed economic conditions, not their own choice, both Teston and DePaoli were forced to leave employment with a signatory operator in the 1950's to seek other employment; Teston got work outside the industry for two years, then returned as a self-employed operator of a small mine, DePaoli went to work immediately as a self-employed operator of the same mine where he had been an employee; as self-employed operators both initially made contributions to the pension Fund after the operating company had signed the Agreement, both discontinued contributions when informed that their contributions would result in no pension for themselves or their partners—and neither has had an offer to return these contributions.

In each case the Trustees' adoption of Resolution No. 63 in January 1965, low-

4. 141 U.S.App.D.C. 390, 439 F.2d 497 (1970).

5. 144 U.S.App.D.C. 364, 447 F.2d 334 (1971).

ering the pension eligibility age to 55, triggered the application. Each met all the qualifications but one, and on this the Trustees rejected both—lack of one full year's employment by an operator signatory to the Agreement immediately prior to retirement. Both DePaoli and Teston had attempted to meet this by employment which the Trustees claimed was in reality self-employment, and thus did not qualify under the all-important one last year's work for a signatory employer immediately before retirement, no matter the years of service in the mining industry, the unquestioned previous years with a signatory employer, or the amount of contributions made for each ton of coal loaded by each pension applicant.

### III.

So we come again to consider the validity of the Trustees' requirement of this one last year's work for a signatory employer in the context of yet another pension applicant's history, the same signatory employment requirement we found invalid and inequitable in *Roark*. In response to *Roark*, the Trustees on 14 January 1971 did adopt Resolution No. 83, but provided, however, that all pension applications received prior to the effective date of 1 April 1971 would continue to be governed by Resolution No. 63, under which the Trustees acted herein denying Teston's pension.

We have detailed the comparable facts of the employment in the coal industry of both Teston and DePaoli, and the rejection by the Trustees of both pension applications on the same ground. We therefore reach the same legal conclusion as to the validity of the Trustees' action on Teston's application as we did in regard to DePaoli. The rationale of our opinion in *DePaoli* fits applicant Teston as squarely as DePaoli and need not be repeated here.[6]

Appellant Trustees complain that while in *Roark* we stated that newly established valid eligibility requirements might possibly include a requirement of signatory last employment, which could be wholly prospective but in the discretion of the Trustees could also be retroactive for validating past retirements, and the Trustees so provided in Resolution No. 83,[7] yet we did not in *DePaoli* (and do not here) accept this final year's employment with a signatory em-

---

6. *Id.;* one difference in procedural result should be noted. In *DePaoli* the trial court granted summary judgment for the Trustees, and we reversed, while here the trial court, having had the guidance of our *Roark* opinion, granted summary judgment for Teston; therefore, here we affirm.

7. Resolution No. 83 reads, in relevant part:
ONE HUNDRED THIRD MEETING OF THE BOARD OF THE UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950, JANUARY 14, 1971
\* \* \* \* \*
I. ELIGIBILITY
A. An applicant who, on or after February 1, 1965, ceases work in the bituminous coal industry as an employee of an employer signatory to the bituminous coal wage agreement then in effect, shall be eligible for a pension if he has:
1. Attained the age of fifty-five (55) years or over at the date of his application for pension.
2. Completed twenty (20) years' service in the coal industry in the United States,

a "year of service" being as defined in paragraph II A hereof . . ..
3. Ceased work in the coal industry immediately following regular employment for a period of at least "one (1) full year" as defined in paragraph II B hereof, as an employee in a classified job for an employer signatory to the bituminous coal wage agreement then in effect.
\* \* \* \* \*
VI. EFFECTIVE DATE
A. Applications received in the office of the Trust Fund on April 1, 1971, and thereafter, shall be subject to, and governed by, the terms of this Resolution.
B. Applications received in the office of the Trust Fund before April 1, 1971, shall be subject to, and governed by, the regulations in effect on the date of receipt of such applications.
C. Applications received in the office of the Trust Fund during the period August 14, 1970, through March 31, 1971, which do not satisfy the requirements of regulations in effect during that period, shall be reviewed subject to the terms of this Resolution.

ployer as being a valid requirement. For the guidance of the Trustees, our failure to strike out the signatory last employment requirement *totally,* our recognition that "new eligibility regulations . . . might contain the signatory last employment requirement in a validating context, . . . if such were fair and equitable," [8] should not be interpreted as a validation of the signatory last employment requirement in every context for every purpose.

Indeed, such a requirement is probably not fair and equitable in the circumstances of most pension applicants. As we said in *DePaoli,* "The net result of the trustees' action is not to accept the invitation of the court to make the new eligibility requirements retroactive in an equitable and valid context. . . ." [9] If a one-year work requirement is devised to exclude pension applicants who as a basis for their claim might point to service in the coal industry in the dim and distant past, all or most such service having been for non-contributory employers, such a requirement of one year's final service with a signatory employer plus an accumulation of years of work in the industry might be fair and equitable and have validity. But as here applied to Teston, who unquestionably has 11 to 12 years of contributory service with a signatory employer, as well as claiming a total of 39 years' total service in the coal mining industry, the final one-year work requirement with a signatory employer is not reasonable. During part of the time when he was admittedly self-employed, and during the year he was working for the Valley Coal Company, which the Trustees contend was self-employment, he also made contributions to the pension Fund. Like applicant Lavella,[10] who was forced to leave the industry incapacitated with the "black lung" disease after an admitted 19½ years of service, Teston here did not leave the coal industry voluntarily, but because of economic conditions, and returned as soon as he could, although in a self-employed capacity. Given his years of service, and admitted contributions by his employers (and himself) to the pension Fund, a rule which denies a pension to an applicant in the situation of Teston or DePaoli (or Lavella) cannot be deemed reasonable, fair, or equitable.

Under Resolution No. 83 the Trustees will permit some workers to file for a pension with only one year of employment with a signatory employer, even though that may be the applicant's only year in the coal industry with a pension contributor. At the same time under Resolution 83 the Trustees are attempting to maintain the last signatory employment requirement of Resolution 63 in effect for all those who filed for a pension before the effective date of 1 April 1971, irrespective of prior years of contributory service in the industry.

Thus, the manner in which the Trustees have perpetuated the final year of service for a signatory employer requirement under Resolution 83 is not fair and equitable; the requirement is not used in a "validating context," considering the other requirements for a pension and the industry service of other applicants who can meet those requirements compared to the contributory industry service of those applicants who are excluded by the standards of resolution No. 83.[11]

The judgment of the District Court is

Affirmed.

---

8. See note 5, *supra,* 144 U.S.App.D.C. at 366, 447 F.2d at 336–337.

9. *Id.,* 144 U.S.App.D.C. at 367, 447 F.2d at 337.

10. 144 U.S.App.D.C. 35, 444 F.2d 910 (1971).

11. In view of our finding that application of the final one-year work requirement with a signatory employer is not equitable here, it is unnecessary for us to reach the Trustees' assertion that Teston's claimed wages from the Valley Coal Company were insufficient to qualify him under Resolution No. 63's definition of "one (1) full year as an employee."