Slimp **KISER**, on behalf of himself and all other similarly situated plaintiffs,
Plaintiff,

v.

Edward L. **CAREY** et al., Defendants.

Edwin Wallace **MOORE**, Plaintiff, and James L. Walker and Estill Smith, Intervening Plaintiffs,

v.

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950** et al., Defendants.

Civ. A. Nos. 2088–71, 2599–70.

United States District Court,
District of Columbia.

Jan. 19, 1973.

Daniel L. O'Connor, J. Michael Farrell, Washington, D. C., for the Class in Civ. A. No. 2599–70.

Julian H. Singman, Washington, D. C., for intervenor-plaintiffs in Civ. A. No. 2599–70.

Louis Rabil, Washington, D. C., for plaintiff and intervenor-plaintiffs in Civ. A. No. 2088–71.

Harold H. Bacon, Joseph A. Rafferty, Jr., Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

These actions came before the Court for hearing on the plaintiffs' motions for summary judgment, both cases having been consolidated for trial.[1] The plaintiffs are all pension claimants of the United Mine Workers of America Welfare and Retirement Fund of 1950 who retired after February 1, 1965.[2] They were denied their claims on the sole ground of not having permanently ceased work in the coal industry immediately following regular employment for a period of at least one full year as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950. This requirement was contained in Resolution No. 63, which was enacted by the defendant Trustees of the Fund on January 4, 1965 to establish pension eligibility requirements for mine workers who permanently ceased work in the bituminous coal industry subsequent to February 1, 1965.[3]

1. By Order dated August 6, 1971, and as amended January 4, 1972, the Court declared Kiser v. Carey, Civil Action No. 2599–70, to be a valid Class Action "as to those applicants denied pension benefits pursuant to paragraph I. A. 3. of Resolution No. 63," the pertinent parts of which are quoted below.

2. The Fund is an irrevocable trust created pursuant to the terms of the National Bituminous Coal Wage Agreement of 1950, and established in compliance with Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186.

3. Resolution No. 63 reads, in pertinent part:

SEVENTY–EIGHTH MEETING OF THE BOARD OF TRUSTEES OF THE UNITED MINE WORKERS OF AMER-

ICA WELFARE AND RETIREMENT FUND OF 1950, JANUARY 4, 1965
\* \* \* \* \*

I. ELIGIBILITY

A. An applicant who subsequent to February 1, 1965 permanently ceases work in the bituminous coal industry as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

1. Attained the age of fifty-five (55) years or over at the date of his application for pension.

2. Completed twenty (20) years' service in the coal industry in the United States, as described in paragraph II A hereof.

3. Permanently ceased work in the coal industry immediately following regular employment for a period of at least one (1)

Plaintiffs' suits challenge the validity of the signatory last employment requirement contained in paragraph I. A. 3. of Resolution No. 63 on the ground that it is arbitrary and capricious and as such should not apply to deny them the pension benefits to which they are otherwise entitled. For the reasons stated below, the Court finds that the plaintiffs are entitled to relief and that their motions for summary judgment should be granted.

## I. ISSUES

The parties are agreed that the issues presented for the Court's determination are questions of law. The central issue is whether the signatory last employment requirement as applied to the plaintiffs in the cases at bar, was a valid requirement. The remaining issues are: (1) whether the Trustees can retroactively amend their eligibility requirements so as to affect the rights of the plaintiffs to receive their pensions, when such pensions were previously denied solely on the basis of an invalid eligibility requirement; (2) as of what dates did any back pension payments owing to the plaintiffs become due; and (3) does Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186, require for pension eligibility that each pension applicant have worked a minimum period of time for an employer signatory to the National Bituminous Coal Wage Agreement of 1950, and, if so, is a period of one year's employment with such a signatory sufficient as regards the plaintiffs at bar to meet the requirements of the Act?

full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, as defined in paragraph II B hereof.

\*    \*    \*    \*    \*

II. DEFINITIONS

B. A full year of employment.

1. "One (1) full year as an employee" as required in paragraph 1 A 3 is one during which an applicant earned at least the daily base rate in effect for the year he retired, multiplied by the average number of days per year worked in the bituminous coal mines in the United States and worked in a minimum of at least twelve (12)

## II. DISCUSSION

A. *As Applied to the Plaintiffs, the Signatory Last Employment Requirement Maintained by the Trustees Was Arbitrary, Unreasonable, and Therefore Invalid, and May Not Serve to Deny Plaintiffs the Pension Benefits to Which They Are Otherwise Entitled.*

█ These cases are but two of a large number of actions brought throughout the past several years to challenge the validity of pension eligibility requirements under the United Mine Workers of America Welfare and Retirement Fund of 1950. The Court of Appeals for this Circuit has had occasion to rule with respect to the particular requirement here in controversy in four prior actions. In each case, the Court of Appeals has held this particular requirement invalid as applied to the plaintiffs then before the Court.[4]

The leading case in this series is Roark v. Boyle, wherein the Court stated:[5]

"The signatory last employment requirement as presented to us on this record, developed on a historical basis no longer pertinent, and maintained in an inequitable context, must stand condemned as being arbitrary in the sense of being legally objectionable, without a rational basis, and cannot be sustained."

While the Court thus left no doubt as to the invalidity of the signatory last employment requirement as applied to the

months. These earnings must have been accumulated in the consecutive period immediately preceding permanent cessation of work . . . . "

4. Roark v. Boyle, 141 U.S.App.D.C. 390, 439 F.2d 497 (1970); DePaoli v. Boyle, 144 U.S.App.D.C. 364, 447 F.2d 334 (1971); Belcher v. Carey, C.A.D.C. No. 71–1622, judgment entered January 28, 1972; and Teston v. Carey, 464 F.2d 765 (D.C.Cir.1972).

5. 141 U.S.App.D.C. 390, 439 F.2d 497, 504 (1970).

plaintiffs in that case, it nonetheless allowed the defendant Trustees some leeway to correct their error. The Court found that the signatory last employment requirement was not invalid *per se,* but could be valid only in "context of a plan that conditions eligibility on a period of contributory employment that is of sufficiently significant duration to warrant eligibility for a flat pension."[6] It indicated that were the Trustees to develop a validating context for the signatory last employment requirement, such provisions could be made applicable to applications theretofore rejected and subsequently presented for reconsideration. In doing so, the Court specifically refused to make the effect of its ruling of invalidity retroactive, limiting its relief to the plaintiffs then before it because they had "undertaken the substantial burden of the litigation required to demonstrate the present requirement to be arbitrary and invalid."[7]

The defendants attempted to comply with the ruling in *Roark* by adopting Resolution No. 83, which revised the eligibility requirements for a pension, to be effective April 1, 1971. However, Resolution No. 83 provided that pension applications received prior to the effective date would continue to be governed by Resolution No. 63, which contained the signatory last employment requirement found invalid in *Roark.* Under Resolution No. 83, only applications received after the date of the *Roark* decision, and theretofore denied under Resolution 63, could be reconsidered under Resolution No. 83. In DePaoli v. Boyle, the Court of Appeals stated:[8]

> "The net result of the trustees' action is not to accept the invitation of the court to make the new eligibility requirements retroactive in an equitable and valid context, as in their discretion the trustees might have done, but specifically to promulgate as far as

DePaoli and others similarly situated are concerned the very eligibility requirements struck down in *Roark."*

The Court went on to find that since plaintiff DePaoli had filed his application prior to the *Roark* decision and had been denied a pension on the same eligibility requirement struck down in *Roark,* he was entitled to the same relief.

In Teston v. Carey, the Court of Appeals again granted relief to a plaintiff who stood in the same position as DePaoli and Roark, in that he had filed for a pension before August 14, 1970, the date of the *Roark* decision, and had been denied a pension on the basis of the signatory last employment requirement declared unlawful in *Roark.*[9] In dealing with the requirement in the context of Resolution No. 83, the Court took a stronger position against it than had been indicated in the two prior opinions. The Court stated:[10]

> "For the guidance of the Trustees, our failure [in *Roark*] to strike out the signatory last employment requirement *totally,* our recognition that 'new eligibility regulations . . . might contain the signatory last employment requirement in a validating context, . . . if such were fair and equitable,' should not be interpreted as a validation of the signatory last employment requirement in every context for every purpose.
>
> "Indeed, such a requirement is probably not fair and equitable in the circumstances of most pension applicants."

The above-cited cases clearly invalidated the signatory last employment requirement as it was applied to the plaintiffs in those actions. The plaintiffs in the cases at bar stand in much the same position as did the plaintiffs in those ac-

---

6. 439 F.2d at 508.

7. 439 F.2d at 509.

8. 144 U.S.App.D.C. 364, 447 F.2d 334, 337 (1971).

9. 464 F.2d 765 (D.C.Cir.1972).

10. 464 F.2d at 769.

tions. It is undisputed that all of the plaintiffs in the cases at bar were denied their pensions solely on the ground of failing to meet the signatory last employment requirement. All of the plaintiffs filed their pension applications prior to the date of the *Roark* decision.[11] These circumstances, coupled with the strong language of the Court in *Teston* that "such a requirement is probably not fair and equitable in the circumstances of most pension applicants," compel a finding by this Court that the signatory last employment requirement as applied to the plaintiffs in the cases at bar was invalid.[12]

B. *The Trustees May Not Retroactively Amend Pension Eligibility Requirements So As to Preclude Any of the Plaintiffs From Obtaining the Relief Sought, Because Plaintiffs' Rights to Pensions Had Fully Matured at the Dates of Denial and Retroactive Amendment Would Be Inequitable.*

■ The defendants have raised the question whether recently enacted Resolution No. 89, which purports to supply the validating context for those pension applications denied prior to *Roark* on the basis of failure to meet the signatory last employment requirement, or Resolution No. 90, which purports to supersede all prior Resolutions dealing with pension requirements, now control the determination as to whether the plaintiffs are entitled to pension benefits. The Court, however, does not recognize any necessity for inquiry into the

specific provisions of either Resolution, for while the Court in *Roark* stated that the requirement there declared invalid, if placed in a validating context, might be made applicable to applications theretofore rejected and subsequently presented for reconsideration, nowhere did it say that any other applicant who had been denied his pension for the same reason would be denied his day in court.[13] All of the plaintiffs, by virtue of membership in the *Kiser* class, or by virtue of intervention or participation in the *Moore* case, challenged the requirement under which their pensions were denied between the time the Court in *Roark* held that requirement invalid and the time the Resolutions were adopted. Under these circumstances, the equities are clearly with the plaintiffs, and, as stated by the Court of Appeals in Gaydosh v. Lewis:[14]

"Equity will estop the trustees from procedural gerrymandering in an effort to preclude applicants whose rights have *fully* matured under existing criteria by abruptly switching eligibility signposts without notice."

In the instant cases, plaintiffs' rights to pensions had "fully matured" in the sense that plaintiffs would have been entitled to their pensions at the time of application had it not been for the unlawful signatory last employment requirement.[15] The subsequent adoption of new requirements for pension eligibility cannot control their entitlement to pensions wrongfully denied under prior requirements.

---

11. It has been stipulated that all members of the *Kiser* class applied for pension benefits between February 1, 1965, the effective date of Resolution No. 63, and the date of the *Roark* decision. Two intervening plaintiffs in Moore v. United Mine Workers of America Welfare and Retirement Fund, Civil Action No. 2088-71, who filed for pensions subsequent to the *Roark* decision subsequently withdrew from that action.

12. 464 F.2d at 769.

13. There is apparently some dispute between the parties as to whether or not Resolution No. 90 contains a modified signatory last employment requirement. However, as stated above, the Court recognizes no need to interpret its provisions for purposes of deciding the cases at bar.

14. 133 U.S.App.D.C. 274, 410 F.2d 262, 266 (1969).

15. See Lavella v. Boyle, 144 U.S.App.D.C. 35, 444 F.2d 910, 912 at N. 3 (1971), for a discussion of "mature" pension eligibility.

C. *Plaintiffs Are Entitled to Back Payments of Pensions from the First of the Month Following the Dates Their Pension Applications Were Denied, Because Defendants Were On Notice As to the Possible Invalidity of the Signatory Last Employment Requirement Prior to the Date of the Final Roark Decision and Because Their Pension Rights Had Fully Matured at the Dates of Denial.*

■ The defendants argue that if the Court finds that plaintiffs are entitled to relief, back pension payments should be made only from the first day of the month following August 14, 1970, the date on which the Court in *Roark* invalidated the signatory last employment requirement. Plaintiffs contend that back pension payments should be made fully retroactive to the dates their pension applications were denied, since under Resolution 63, paragraph IV. A. 1. (a), payment of pensions would have commenced the first month after authorization of the pensions.

The defendants are apparently urging this Court to use its equitable discretion on the ground that they were not aware of the invalidity of the signatory last employment requirement prior to the *Roark* decision, and so could not have prepared for any impact on the Fund owing to possible subsequent recoveries of pensions by applicants who stood in the same position as the plaintiffs in *Roark*. When viewed in light of the history of the *Roark* litigation, it is readily apparent that the defendants' argument is without merit. Prior to the Court of Appeals' decision on August 14, 1970, the Court, in Roark v. Lewis, had held that the same plaintiffs had made a *prima facie* showing that the signatory last employment requirement was unlawful, but remanded the case to the District Court to give the Trustees an opportunity to show a rational nexus between the requirement and the purposes of the Fund.[16] This 1968 decision was certainly sufficient to put the Trustees on notice of the probable invalidity of the requirement, or at least that the requirement was being seriously questioned by the Court, so that the implication raised by the Trustees that they were not apprised of the possible invalidity of the requirement until the date of the final *Roark* decision is unrealistic in view of the posture of the case prior to that date.

Moreover, under the rationale that plaintiffs' rights to pensions had "fully matured" at the dates of denial in the sense that they would have received their pensions after that time had it not been for the illegal requirement, it is logical to conclude that any payments to which they are found to be entitled should be made retroactive to the first day of the month following the date of denial. The Court notes that plaintiffs in other cases throughout this jurisdiction have received fully retroactive pension relief, and in accordance with the considerations set forth above finds that plaintiffs are entitled to payments of back pensions due from the first day of the month following the dates their pension applications were denied.[17]

■ In light of the Court's finding, the corollary problem remains of what treatment should be afforded the estates of miners whose pension applications were denied on the sole ground of failure to meet the signatory last employment requirement and who died prior to

16. 130 U.S.App.D.C. 360, 401 F.2d 425 (1968).

17. Collins v. UMWAW&RF, 141 U.S.App. D.C. 387, 439 F.2d 494 (1970) ; Roark v. Boyle, 141 U.S.App.D.C. 390, 439 F.2d 497 (1970) ; DePaoli v. Boyle, 144 U.S. App.D.C. 364, 447 F.2d 334 (1971) ; Belcher v. Boyle, U.S.App.D.C. No. 71– 1622 (1972) ; Teston v. Cary, 464 F.2d 765 (D.C.Cir. 1972) ; Gomez v. Boyle, (D. D.C.) C.A. No. 170–71 ; Stuart v. Boyle (D.D.C.) C.A. No. 3792–70 ; Robbins v. Boyle, (D.D.C.) C.A. No. 2218–67 ; Robbins v. Carey, (D.D.C.) C.A. No. 1720– 71 ; Fiorado v. Carey, (D.D.C.) C.A. No. 1960–71.

the effective pension enrollment date contained in the Order accompanying this Opinion. Since such deceased miners would have received their pensions from the first of the month following dates of authorization had it not been for the illegal requirement, the Court finds that the estates of such miners are entitled to receive pension installments accrued from the first of the month following dates of denial to the dates of death.

In passing, the Court wishes to note that with respect to *prospective* pension benefits, the parties are agreed that any enrollment of plaintiffs as pensioners of the Fund should be effective as of the beginning of the month during which this Opinion and its accompanying Order are issued.

D. *Section 302 of the Taft-Hartley Act Requires That Each Pension Applicant Have Worked a Minimum Period of Time for an Employer Signatory to the National Bituminous Coal Wage Agreement of 1950, But As Applied to the Plaintiffs in the Cases At Bar, Such Requirement Is Met By One Year's Service With a Signatory Employer At Any Time During the Applicant's Employment in the Coal Industry, After May 28, 1946.*

The final question for determination is whether Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186, requires some significant period of employment with an employer signatory to the National Bituminous Coal Wage Agreement of 1950 before an applicant is entitled to pension payments from the Fund. Section 302 of the Act originated as an anti-bribery statute designed to restrict payments by employers to unions and union officials. Paragraph (c)(5) allows an exemption for employer payments to trust funds established for the benefit of employees, and providing for pensions on retirement or death.[18] In *Roark*, the Court found that Section 302 requires "that each pensioner have some history of contributory employment."[19] This was based on the rationale that the purpose of the Section

18. "(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities;"

19. 439 F.2d at 501.

to prevent bribery while at the same time permitting legitimate pension plan agreements is furthered when the plan to which the employer contributes is one "which the employer might himself have established in his own economic interest." [20] A contributing employer's economic interest would obviously not include the payment of benefits to persons never having been in his employ.

The defendant, in oral argument, contended that the Court in *Roark* set down a minimum of five years as a significant period of contributory employment.[21] Plaintiffs, in oral argument, took the position that while some period of contributory employment may indeed be required, a period of one year's service with a signatory employer is sufficient.

Initially, it should be noted that the defendants' argument as to a five year contributory service requirement was not raised by way of written pleadings, but was first brought to the Court's attention by way of oral argument held during the final stages of this litigation. While this fact in itself raises some doubts as to the propriety of the introduction of the issue into the cases at bar, the Court recognizes the necessity to deal with the issue because of the importance ascribed to it in the *Roark* decision. However, the Court is of the opinion that the five year period mentioned by the Court in *Roark* was set forth as a guideline to the Trustees, and was not intended to stand as a minimum requirement for pension eligibility.

Section 302(c)(5) does not designate any length of time constituting a significant period of contributory employment. The five year period set forth by the

Court of Appeals in *Roark* was apparently influenced to a substantial degree by the Court's study of the Digest of 100 Selected Pension Plans under Collective Bargaining, Labor Bulletin No. 1435, which had been made a part of the record in that case, and which indicated that most multi-employer plans containing a signatory last employment requirement also required a period of contributory employment in excess of five years.[22] The Court indicated that if the Trustees wished to utilize a signatory last employment requirement, such requirement could only be valid *when coupled with* a minimum of five years' contributory employment. This Court does not interpret the Court of Appeals' language to mean that five years' contributory service is required where there is no signatory last employment requirement coupled with it.

In the cases at bar, the Court has already held that the signatory last employment requirement as applied to the plaintiffs was invalid. In absence of that requirement, the Court is of the opinion that the five year period of contributory employment as set forth by the Court of Appeals in *Roark* is not applicable here. Recognizing the need for some significant period of contributory employment, this Court has determined that with respect to these plaintiffs, a period of one year's contributory employment at any time after May 28, 1946 is sufficient to meet the requirements of the Taft-Hartley Act.[23]

A one year contributory employment requirement is appropriate for a number of reasons. At the time plaintiffs' applications were denied, the Trustees

---

20. 439 F.2d at 505.

21. This is based on the Court's statements that "a requirement of signatory last employment can be a *valid eligibility* requirement only if it is in context of a plan that *conditions eligibility on a period of contributory employment that is of sufficiently significant duration to warrant eligibility for a flat pension.*" "A

period less than five years would manifestly not be sufficient under this standard." 439 F.2d at 508.

22. 439 F.2d at 507.

23. Eligibility requirements for the 1950 Fund were built on those of the predecessor Fund of 1947 which provided pensions for those retiring after May 28, 1946.

themselves were under the apparent understanding that one year was sufficient under the Taft-Hartley Act in that the signatory last employment requirement applied to the last *full year* prior to retirement. The Trustees' error was not the requirement of one year's contributory employment, but the requirement that the one year of contributory service be rendered the year immediately preceding retirement. Second, the equities in this matter are clearly with the plaintiffs. They have been without any form of relief for the several years during which these and other actions throughout the Court have been pending. No more than one year's contributory service was required at the dates their pension applications were denied, and for the Court to impose a longer requirement at this late date would only serve to deny unjustly the relief to which some of the plaintiffs would otherwise be entitled.[24] Finally, the plaintiffs themselves have recognized a one year's requirement of contributory employment as being reasonable under the circumstances and as being sufficient to meet the requirements of the Taft-Hartley Act.

## IV. CONCLUSION

In accordance with the aforegoing, the Court finds as a matter of law that plaintiff Kiser, the *Kiser* class and the intervening plaintiffs in Civil Action No. 2599–70, by virtue of their support of plaintiff Kiser's motion, are entitled to summary judgment. Plaintiff Moore and the intervening plaintiffs in Civil Action No. 2088–71, by virtue of their adoption of plaintiff Moore's motion, are similarly entitled to summary judgment. An appropriate order covering the plaintiffs and intervening plaintiffs in both actions shall be issued consistent with this opinion.

24. Both the defendants and the plaintiffs are agreed that some of the plaintiffs would not be able to meet a five year contributory employment requirement.