Eleanor C. SHARRON, Executrix of the Estate of Martin B. Sharron, Deceased, Plaintiff-Appellee,

v.

AMALGAMATED INSURANCE AGENCY SERVICES, INC., a corporation as Administrator of the Central States, Southeast and Southwest Areas Pension Fund, etc., Defendant-Appellant.

No. 82–7095.

United States Court of Appeals, Eleventh Circuit.

May 2, 1983.

Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, Timothy G. Costello, Milwaukee, Wis., and Beddow, Fullan & Vowell, J. Scott Vowell, Birmingham, Ala., for defendant-appellant.

Carlton, Boles, Clark, Vann, Stichweh & Caddis, George M. Boles, Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Central States, Southeast and Southwest Areas Pension Fund, an affiliate of the Teamsters Union,[1] appeals from summary judgment in favor of plaintiff Martin B. Sharron.[2] The Pension Fund contends that the district court erred in setting aside a decision of the Pension Fund Trustees denying Sharron's application for a total and permanent disability benefit. The Pension Fund also contests the district court's award of attorney's fees in favor of Sharron. We reverse.

## I. FACTS

Martin Sharron worked as a truck driver for Mercury Freight Lines from 1948 until he left voluntarily on October 23, 1973. He was a member of Teamsters Local Union No. 612 and worked under a contract negotiated by the Union for the entire period of his employment with Mercury. In accordance with collective bargaining agreements, Mercury contributed to the Pension Fund on behalf of Sharron for a period of almost 18 years—from January 30, 1955 until his departure in 1973.

Following his departure from Mercury, Sharron worked as a self-employed truck driver until March 5, 1977. During that period of almost three and a half years, no contributions were made to the Pension Fund by him or by anyone on his behalf. On March 5, 1977, he suffered a disabling stroke. Four months later, he applied to the Pension Fund for a total and permanent disability benefit. The Pension Fund Trustees denied Sharron's application on the ground that he had failed to satisfy the 15 years continuous service requirement set out in Article III, Section 4, of the Pension Plan.[3] Although he had 15 years of continuous service with Mercury, the Plan requires 15 years with no subsequent break in service of three years or more. The Trustees counted the period of Sharron's self-employment as such a break in service and thus refused to count his prior service with Mercury. In September 1977, Sharron began receiving monthly Social Security disability benefits.

On October 9, 1979, Sharron went to work for Red Wing Carriers. The district

---

1. On March 17, 1981, the parties filed with the district court a stipulation substituting Central States, Southeast and Southwest Areas Pension Fund as defendant in place of Amalgamated Insurance Agency Services, Inc. The Pension Fund was established under Section 302 of the Taft Hartley Act, 29 U.S.C.A. § 186, and is administered by a Board of Trustees composed of union and employer representatives.

2. Martin Sharron died between the time of the district court's summary judgment order and the filing of this appeal. His wife, Eleanor C. Sharron, was substituted as representative of his estate. For convenience, references to Sharron are in the masculine.

3. The district court found that the pension plan applicable to Sharron was the plan dated July 1, 1973. An amended plan, adopted pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") with an effective date of January 1, 1976, did not apply to Sharron. In this appeal, the parties do not dispute the court's finding that the 1973 Pension Plan applied.

court found that, following a probationary period, Red Wing made contributions on behalf of Sharron to the Pension Fund.[4] Sharron suffered another stroke on December 29, 1979, and stopped work for Red Wing. He then applied a second time to defendant for a total and permanent disability benefit, and the Trustees again turned his application down on the same ground on which they turned it down the first time.

## II. SHARRON'S ELIGIBILITY FOR A DISABILITY BENEFIT

### A. *Standard of Review in the District Court*

■ In reviewing the Trustees' decision, the district court was bound by a strict standard of review. As the former Fifth Circuit concluded in *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir. 1979):

> According to the clear weight of federal authority, the actions of the trustees in the administration of the pension plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious.

Although the court below frequently referred to the arbitrary or capricious standard, it began its analysis with a statement that the Trustees' decision could be reversed if it was "arbitrary or capricious," "unreasonable," or not "fair and equitable." As support for the second and third standards, the court cited two cases: *Teston v. Carey,* 464 F.2d 765, 769 (D.C.Cir.1972), and *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir.1972). The opinion in *Bayles,* however, clearly establishes as the law of this Circuit[5] that the

decision of the Trustees can be reversed only if it was arbitrary or capricious. The distinction between the standard enunciated in *Bayles* and those enunciated in *Teston* and *Lee* is significant. Courts have long recognized the need to provide pension fund trustees with flexibility in pension plan administration:

> It is impossible, of course, to ascertain at the establishment of a fixed contribution type employee benefit plan what precise payments will be available for distribution to beneficiaries at some future date. The level of those payments can be established with certainty only by reference to general economic conditions, investment yields, the relative strength of a particular established fund, and the actual and projected levels of demands made upon the fund for payments at any specific time. Because of this confluence of complex economic considerations, trustees of a fixed contribution trust fund must, in most circumstances, be accorded some discretion in determining questions of eligibility and the precise contours of benefits to be awarded. See D. Fellers, A General Theory of the Collective Bargaining Agreement, 61 Calif.L.Rev. 633, 732–33 (1973); R. Goetz, Developing Federal Labor Law of Welfare and Pension Plans, 55 Cornell L.Q. 911 (1970).

*Bricklayers, Masons and Plasterers Int'l Union of America, Local Union No. 15 v. Stuart Plastering Co.,* 512 F.2d 1017, 1026 (5th Cir.1975) (footnote omitted). Accordingly, a court should enforce a decision of pension fund trustees even though the court may disagree with it, so long as the decision is not arbitrary or capricious. In our view, the district court erred by relying in part on more lenient standards from other circuits.[6]

---

**4.** Defendant contends that no contributions were made by Red Wing on Sharron's behalf. In light of the eligibility requirements of the Pension Plan, discussed *infra*, the correctness of defendant's contention does not affect Sharron's right to benefits, and we do not decide the issue.

**5.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

**6.** Moreover, it is doubtful that the standards cited by the district court represent the position of either the Ninth Circuit or the D.C. Circuit. *See, e.g., Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir.1977) (trustees' decisions may be reversed "only where they are arbitrary, capricious, or made in bad faith, not supported by substantial evidence, or erroneous on a question of law") (citing cases from D.C. Circuit); *Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950,* 517 F.2d

**B.** *Application of the Terms of the Pension Plan to Sharron*

To qualify for a disability benefit under the 1973 Pension Plan, an employee must meet the requirements of Article III, Section 4(A), of the Plan, which provides:

Conditions for Qualification for Disability Benefit. An employee who becomes totally and permanently disabled (as hereinafter defined) after

(a) attainment of age forty-five; and

(b) completion of fifteen years *of continuous service* in the industry; and

(c) completion of three years of continuous service under a collective bargaining agreement for any employee who became a member of the Plan prior to July 1, 1967, and completion of five years of continuous service under a collective bargaining agreement for any employee who became a member of the Plan on and after July 1, 1967; and

(d) payment of forty weeks contributions to the Trust Fund by the employer on his behalf for any employee who became a member of the Plan prior to July 1, 1967, and payment of sixty weeks contributions to the Trust Fund on his behalf for any employee who became a member of the Plan on and after July 1, 1967, and payment of two hundred twenty-five weeks contributions to the Trust Fund by the employer on his behalf for any employee who became a member of the Plan on and after April 1, 1969

shall be eligible for a disability benefit, in accordance with Paragraph A of Section 5 of this Article. (emphasis added).

The phrase "continuous service" in Section 4(A)(b) is defined in the definitions Article (Article I, Section 14(A)) as follows:

Continuous Service in the Industry as an employee shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or reemployment date *following the last break in service.* (emphasis added).

"Break in service" is defined in the same Article (Article I, Section 13):

A Break In Service, within the meaning of the Plan, shall occur *if an employee is not in covered employment* for a period of five consecutive years between February 1, 1955 and April 1, 1969 or *for a period of three consecutive years after April 1, 1969.* Service in the armed forces of the United States under Selective Service or during a war or international police action; absence on account of sickness or injury; or absence on account of a lay-off during which contributions have been paid to the Pension Fund for at least ten weeks each year up to a maximum of two years, shall not be included in determining a break in service. (emphasis added).

The Pension Fund Trustees denied Sharron's application for a disability benefit on the ground that a "break in service" precluded Sharron from counting the time prior to the break; therefore, he did not have a sufficient number of years in the industry to qualify for the benefit. Specifically, Sharron suffered a break in service of more than three years when he left Mercury Freight Lines in 1973 and remained self-employed until 1977.[7] *According to Article I, Section 14(A), the time prior to the break in service does not count in determining whether Sharron served over 15 continuous years.*

The district court agreed with the Trustees' determination that Sharron did not

---

1275, 1283 (D.C.Cir.1975) ("Trustees have 'full authority ... with respect to questions of coverage and eligibility' and ... the court's role is limited to ascertaining whether the Trustees' broad discretion has been abused by the adoption of arbitrary or capricious standards.") (citing *Roark v. Boyle,* 439 F.2d 497, 499 (D.C. Cir.1970)).

**7.** The period during which Sharron was self-employed does not count toward the continuous service requirement. The second paragraph of Article I, Section 14(A), states in bold print that:

Any service in the industry as an employer, as a member of a partnership *or self-employed* shall not be included as creditable service for purposes of this Pension Plan. (emphasis added).

meet the terms of the Pension Plan because of the voluntary break in service. District Court Opinion at 6–7. In this appeal, Ms. Sharron admits that a break in service occurred and that the eligibility requirements of the Plan were not met. Nevertheless, the district court held, and appellee argues, that the Trustees should have approved Sharron's application because the plan was arbitrary and unreasonable as it applied to him. The district court offered two reasons in support of this holding. First, the pamphlet that was distributed to employees describing the Pension Plan did not clearly notify employees as to the break in service rule. By drafting an ambiguous document, the Trustees breached their fiduciary duty to Sharron, *Lee v. Nesbitt,* 453 F.2d 1309, 1311 (9th Cir.1972), and were "equitably estopped" from applying the break in service rule to him. Second, denying benefits to Martin Sharron worked an unfair, illegal "forfeiture" of his "pension rights," which rendered the break in service rule unenforceable against him. We disagree with both of these conclusions.

■ 1. *Ambiguity of the Pension Plan and accompanying pamphlet.* The pamphlet which was provided to employees [8] contains a summary description of the Plan's provisions and explanations as to their application to various situations. It also contains four pages of hypothetical questions and answers designed to further aid the employee in understanding the Plan. The Plan itself is reprinted in the final section of the pamphlet. The district court, in assessing the alleged ambiguity of the pamphlet, examined only its summary and explanation section on the ground that an employee would have difficulty comprehending the Plan itself. The court then focused only on one page of the summary—the page dealing with disability benefits—to conclude that the pamphlet did not adequately apprise employees of the break in service rule. At that particular page, the summary makes no reference to the rule.

The district court's focus on only one page of the summary represents an unrealistically narrow view of how a reasonably prudent employee would read and review this important document. The first page after the table of contents warns that "It is very important that you read the book carefully and save it for future use." At the time that one is considering leaving covered employment, it is reasonable to assume that more than just the page on disability benefits would be examined. On other pages of the pamphlet, which deal with matters such as general eligibility requirements, disability pensions, and retirement pensions, the reader is clearly warned about the break in service rule. For example, at page 11, following a bold heading titled "LOSS OF CREDITED SERVICE," the pamphlet states:

> If you did not work in covered employment for five consecutive years between February 1, 1955 and April 1, 1969, or for three consecutive years after April 1, 1969, you cannot count years of employment before such a break in figuring your total years of service for a pension. (a) Time spent in the Armed Forces of the United States under Selective Service or during a war or international police action; (b) absence on account of a layoff during which you paid into the Fund for at least ten weeks each year (for two years); or (c) absence on account of sickness or injury, will not be counted in determining the length of the break.

In addition to other references of a similar nature,[9] three of the 25 questions in the

---

8. Sharron did not allege that he did not receive a copy of the pamphlet.

9. For example, at page 19, the employee is warned that a change of employment may result in loss of prior credit if his new employer does not contribute to the Pension Fund, and if this non-contribution lasts longer than three years:

> CONTINUANCE OF CREDIT UPON CHANGING JOBS
> If you take a job with another employer who is contributing to the Pension Fund (within three years after leaving your first employer), you may count your past service in meeting the years of service requirement. You may also take credit for all years of employment with your new employer.

question and answer section warn about and explain the break in service rule.[10] Therefore, reviewing the pamphlet as a whole, we conclude that the district court erred in focusing only on a limited part of the summary and in concluding that the pamphlet is ambiguous.[11]

■ 2. *Alleged forfeiture of Sharron's "pension rights."* The second ground upon which the district court reversed the Trustees' decision is that it was arbitrary and capricious as applied to Sharron. *See Burroughs v. Board of Trustees of Pension Trust Fund for Operating Engineers,* 542 F.2d 1128, 1131 (9th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). Sharron had worked for Mercury Freight Lines for 25 years and Pension Fund contributions had been made on his behalf for 18 of those 25 years. Quoting from *Roark v. Boyle,* 439 F.2d 497, 504 (D.C.Cir.1970), the court below labelled the Mercury Freight Lines contributions on behalf of Sharron as "quasi-salary"; on this basis, the break in service rule was held unenforceable against Sharron insofar as it deprived him of his "pension rights" earned during the 18 years that these contributions were made. The employment duration requirement of Article III, Section 4(A), is only 15 years, and to deprive Sharron of his

"pension rights so earned by him over a period of 15 years constitutes in legal effect a forfeiture, ... which equity traditionally disfavors." District Court Opinion at 9 (citations omitted).

This view of the pension fund contributions misconstrues the nature of this particular Pension Plan and Sharron's rights under it. The eligibility requirements make clear that at no time during or after Sharron's employment with Mercury Freight Lines did he possess a "right" to payment from the Fund. The eligibility requirements are conditions precedent to eligibility, and in this Plan there is no vesting of rights based only on years of service. In fact, Article VII, Section 1, of the Plan provides that "No employee or other person shall have any vested interest or right in the Trust Fund or in any payments from the Trust Fund." This is in contrast to defendant's amended 1976 Pension Plan, which incorporates a vesting provision in accordance with the requirements of the Employee Retirement Income Security Act of 1974. The D.C. Circuit in *Roark v. Boyle, supra,* 439 F.2d at 504, drew this distinction between vesting and non-vesting pension plans, noting that, "increasingly," *modern* plans treat pension contributions by employers as "quasi-salary." "Such pension

---

The page immediately following even warns that an employee who has started receiving his pension may stop receiving the pension if he becomes self-employed.

10. 19. Q. WILL I LOSE MY PENSION CREDITS IF I CHANGE MY JOB?

A. Not if you change to a job with another employer who is contributing to this Pension Fund or is contributing to a Pension Fund with which this Fund has a reciprocal agreement; or if you return within three years to a contributing employer.

20. Q. WHAT HAPPENS IF I GO TO WORK FOR AN EMPLOYER WHO IS NOT CONTRIBUTING TO THE PENSION FUND?

A. If you work for this employer for three years and he does not become a participating employer to the Pension Fund, your service will be broken and you will lose all service credit.

If your new employer becomes a contributing employer to the Pension Fund or if he becomes a contributing employer to a Related Pension Fund with which this Fund has a reciprocal agreement within three years after

you have entered his employ, you will lose no credit.

21. Q. WHAT HAPPENS IF MY SERVICE IS BROKEN?

A. You lose all pension credits and are no longer covered under the Pension Plan. A break occurs if no payments are made to the Fund for three consecutive years. Time spent in the Armed Forces under Selective Service or during war or international police action; absence on account of sickness or injury; absence on account of layoff during which you paid into the Fund for at least ten weeks each year (for two years) will not be counted in determining the length of the break.

11. The district court recited no testimony or other extrinsic evidence in support of its conclusion. Thus, the determination of whether the pamphlet is ambiguous is a question of law which is reviewable *de novo* in this Court. *See, e.g., Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1175 (5th Cir. Unit A December 7, 1981).

plans," the court continued, "may go so far as to give, to a greater or a lesser degree depending on the specific terms of the plan, a vested right to pension credits accumulated during a period of employment with a contributing employer." *Id. Cf. Malone v. Western Conference of Teamsters Pension Fund,* 110 Cal.App.3d 538, 168 Cal.Rptr. 201 (Ct.App.1980) (labelling pension contributions as "quasi-salary," but not addressing whether particular plan was vesting or non-vesting). Insofar as the "specific terms" of the Plan before us indicate that it is not a vesting plan, we cannot label Mercury Freight Lines' contributions to the Pension Fund as Sharron's "quasi-salary" to which he has any "pension right."

Although the 1973 Plan does not permit vesting of pension rights, the break in service rule does allow employees up to three years without employer contributions before the employee's prior service cannot count toward his pension eligibility. This three year period distinguishes this Plan from pension plans which have what is sometimes known as a "signatory last employment" requirement. Under some of those plans, an employee may be disqualified from receiving a pension if, for the year immediately prior to his retirement, he worked for an employer who did not make pension fund contributions.[12] On the other hand, plans which contain a break in service rule that includes an extended grace period—such as the plan before us—consistently have been enforced by federal courts. These courts have enforced such rules on the grounds that they are reasonably related to the legitimate pension fund purpose of actuarial soundness, follow the require-

ments of the Labor Management Relations Act, promote the interests of employees, and "promote[ ] an employer's legitimate interest in the continuous employment of his employees." *Pounce v. Construction Laborers Pension Trust,* 628 F.2d 537, 542–43 (9th Cir.1980). *See, e.g., Van Fossen v. International Brotherhood of Teamsters Union Local No. 710 Pension Fund,* 649 F.2d 1243, 1248 (7th Cir.1981); *Burroughs v. Board of Trustees of Pension Trust Fund for Operating Engineers, supra,* 542 F.2d at 1131; *Foley v. Devaney,* 528 F.2d 888 (3rd Cir.1976). In fact, this defendant's break in service rules have been enforced against plaintiffs who, like Sharron, had accumulated more than 15 years of continuous service prior to a break in service of more than three years. *See, e.g., Davis v. Central States, Southeast and Southwest Areas Pension Plan,* 460 F.Supp. 926 (E.D.Tenn. 1978), *aff'd without published opinion,* 633 F.2d 214 (6th Cir.1980). The court in *Davis* noted that, as in this case, ERISA did not apply so as to vest rights in Davis' prior service. And in *Vermeulen v. Central States, Southeast and Southwest Areas Pension Fund,* 490 F.Supp. 234 (M.D.N.C. 1980), a case involving defendant's 1976 amended pension plan, the court upheld the Trustees' denial of benefits although the plaintiff had accumulated 23 years of service before a break in service.

The record reflects that Sharron voluntarily chose to leave covered employment with Mercury Freight Lines. Thus, we are not presented with a situation similar to that in *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir.1972), in which the court refused to enforce a break in service rule against a plain-

---

**12.** Courts have on occasion not enforced "signatory last employment" requirements against employees who, immediately prior to their retirement, worked for a non-contributing employer for only a relatively short period of time. *See, e.g., Teston v. Carey,* 464 F.2d 765, 768–69 (D.C.Cir.1972); *Roark v. Boyle,* 439 F.2d 497, 500–08 (D.C.Cir.1970); *Collins v. United Mine Workers of America, Welfare and Retirement Fund of 1950,* 298 F.Supp. 964, 970 (D.D.C. 1969), *aff'd,* 439 F.2d 494 (D.C.Cir.1970). *See also Malone v. Western Conference of Teamsters Pension Fund,* 110 Cal.App.3d 538, 168 Cal.Rptr. 210 (Ct.App.1980). In these cases,

the courts emphasized the employee's long history of contributions to a pension fund. And in *Teston, Roark,* and *Collins,* the courts noted that the employees had *involuntarily* left covered employment to work for a non-contributing employer. 464 F.2d at 769; 439 F.2d at 506 n. 8; 298 F.Supp. at 966–67. (In *Malone,* the record did not disclose the reason for the employee's departure.) *See Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir.1972). Thus, these three cases are also distinguishable from Sharron's situation insofar as his decision to leave Mercury Freight Lines was voluntary.

tiff who involuntarily left covered employment. Nor is this case like *Reiherzer v. Shannon,* 581 F.2d 1266, 1273 (7th Cir.1978), which held that a decision of pension fund trustees was arbitrary and capricious in part because the trustees had administered eligibility requirements inconsistently. *See also Bayles v. Central States, Southeast and Southwest Areas Pension Fund, supra,* 602 F.2d at 100. Appellant cites several cases involving this Pension Plan which indicate that these Trustees consistently have refused to waive the break in service rule. When presented with Sharron's application, the Trustees applied the rule as they had in the past. Had they not done so, they arguably might have been made defendants in an action by other Plan beneficiaries for wasting Fund assets. As the First Circuit pointed out in *Rueda v. Seafarers Int'l Union,* 576 F.2d 939, 942 (1978):

> We also must realize that we review for arbitrariness in the light of the trustees' responsibility to all potential beneficiaries.... This duty in the large, the necessity to draw hard boundary lines, inevitably adversely affects some individuals who find themselves on the wrong side of a line.

The fact that Sharron found himself "on the wrong side of the line" did not give the district court authority to redraw the eligibility line so as to change the result in this case. The district court erred in concluding that the Trustees' action was arbitrary and capricious.

### III. ATTORNEY'S FEES

The district court awarded attorney's fees to Sharron on the ground that "through the efforts of counsel substantial benefit will undoubtedly be conferred by our holding upon others like situated." (quoting *Malone v. Western Conference of Teamsters Pension Fund,* 110 Cal.App.3d 538, 168 Cal.Rptr. 210, 217 (Ct.App.1980)). *See Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939). Because we have already decided that the Trustees' action should be upheld and that defendant is entitled to judgment, this basis for awarding fees no longer exists. Although under ERISA, *see* 29 U.S.C.A. § 1132(g), the losing party may under certain circumstances be entitled to attorney's fees, we have already determined that ERISA does not apply to this Pension Plan. *See* note 3 *supra.* The Labor Management Relations Act, which does apply, makes no provision for attorney's fees. In light of the outcome of this appeal and the absence of any statutory provision for fees, we hold that appellee is not entitled to collect them in this action. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

We REVERSE the judgment of the district court and REMAND for entry of judgment in favor of defendant Pension Fund.