Jimmie **PATTERSON**

v.

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950 et al.**

**Civ. A. No. 7261.**

United States District Court,
E. D. Tennessee, N. D.

Oct. 7, 1971.

Dalton L. Townsend, Walter, Gilbertson & Claiborne, Knoxville, Tenn., for plaintiff.

E. H. Rayson, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., Welly K. Hopkins, Harold H. Bacon, T. G. Dudley, Washington, D. C., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, a retired coal miner, seeks a declaration as to his pension rights under the United Mine Workers of America Retirement and Welfare Fund of 1950. 28 U.S.C. § 2201. Application was filed for fund pension status with the Trustees of the Fund, defendants in this case, on June 5, 1970, and was denied on October 30, 1970. Plaintiff had satisfied all eligibility requirements for pension benefits under the Fund except as to the requirement contained in the Trustees' Resolution No. 63 that before a person is entitled to a pension from the Fund he must have had regular employment with an operator signatory to the National Bituminous Coal Wage Agreement of 1950 for a period of one full year prior to retirement. The pertinent language of this resolution is as follows:

"I. ELIGIBILITY

"A. An applicant who subsequent to February 1, 1965, permanently ceases work in the bituminous coal industry as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

\*   \*   \*   \*   \*   \*

"3. Permanently ceased work in the coal industry immediately following regular employment for a period of at least one (1) full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, as defined in paragraph II B hereof."

Resolution No. 63 became effective February 1, 1965. Defendants, however, assert that plaintiff's rights are controlled by Resolution No. 83 which was adopted on January 14, 1971, and became effective April 1, 1971. That Resolution retained the one-year requirement but added another that the applicant must have had a minimum of five years employment for a contributory employer. It also provided for reconsideration of all applications received and denied between August 14, 1970 and April 1, 1971; but stated that applications received prior to August 14, 1970 were to be considered under regulations existing at the time of filing. Plaintiff's application, as previously noted, was filed prior to August 14, 1970.

Records of the United Mine Workers of America Welfare and Retirement Fund of 1950 show that the plaintiff worked in mines signatory to the National Bituminous Coal Wage Agreement for most of the years from the Fund's inception in 1950 through June, 1961—roughly eleven and one-half years. He worked for an operator not signatory to the Agreement from January through September, 1963—a total of nine months. He returned to work for a signatory operator in October, 1963 and remained in signatory employment until December,

1964, when his signatory employment was involuntarily terminated. (Counsel stated in oral argument that this termination of signatory employment was caused by the closing of the mine wherein plaintiff was employed.) The parties have stipulated that plaintiff was thereafter unable to find signatory employment in the area of his home or in areas contiguous thereto because none was available. Thereafter, from December, 1964, through September, 1966, he worked for non-signatory operators. This was his last employment in the bituminous coal industry.

Since he had worked more than forty years in the coal mines at the time of his retirement, the plaintiff would have been entitled to a pension under Resolution No. 63 had he not worked in the bituminous coal industry after leaving signatory employment in December, 1964. Thus, in December, 1964, out of thirteen years in the industry since the creation of the 1950 Fund, he had worked more than twelve years for signatory operators. At the time of his retirement from the industry he had worked fourteen and one-half years since the Fund's creation of which years only slightly more than two were for non-signatory mines.

All of the material facts have been stipulated and each party has filed a motion for summary judgment.

■■ We are cognizant of the rule that gives Trustees wide latitude in specifying from time to time the requirements which are to be met for a pension. Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963). Also, the scope of judicial review is limited to the determination of whether the Trustees acted arbitrarily, capriciously or in bad faith; and, if the Trustees' decision is supported by substantial evidence, and they have not made an error of law, their decision should be upheld. Danti v. Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962); Miniard v. Lewis, 128 U.S. App.D.C. 299, 387 F.2d 864 (1967).

Thus, the initial question for determination is whether the requirement that the last year's work of the employee must be for an employer signatory to the National Bituminous Coal Wage Agreement, which is contained in Resolution No. 63 and retained in Resolution No. 83, as applied to plaintiff, is arbitrary and capricious and, therefore, invalid.

Plaintiff's principal argument to overturn the action of the Trustees is that the signatory last employment requirement in Resolutions No. 63 and No. 83 is invalid because it is arbitrary and capricious. He relies heavily, but not entirely, on the recent decision of Roark v. Boyle, 141 U.S.App.D.C. 390, 439 F. 2d 497 (1970). In that case, retired coal miners filed an action against the Trustees of the pension fund seeking their enrollment as beneficiaries of the Fund. The district court granted the Trustees' motion for summary judgment and the retired miners appealed. The court held that the regulation requiring miner's last employment before retirement to have been for at least one year with a signatory to the National Bituminous Coal Wage Agreement of 1950 in order to be eligible for pension was invalid because it was arbitrary. The objectionable arbitrariness was the absence of a reasonable relationship between the signatory last employment requirement and a legitimate purpose of the Fund. Defendants argue that neither this decision nor reason supports plaintiff's claim to a pension. Despite the defendants' apparent acceptance of the conclusion in that case concerning the validity of the signatory last employment requirement, this Court prefers to make its own analysis of the question.

In *Roark*, the Trustees posed two justifications for the signatory last employment requirement. First, the requirement was created to prevent those long separated from the coal industry from obtaining a pension and thereby causing destructive dilution of the Fund. Second, Section 302(c) (5) of the Taft-

Hartley Act (29 U.S.C. § 186(c) (5)), which authorized creation of the Fund, required promulgation of such an eligibility requirement. The requirement serves two distinct purposes. First, it discourages those long separated from the industry from returning to it merely to obtain a pension. This legitimate objective of the Fund is achieved by the requirement of a substantial period of regular employment within the industry immediately preceding retirement from the industry. Second, the requirement rewards signatory employers for their contributions to the Fund. This objective is achieved by requiring pension applicants to have worked for a signatory employer for a substantial period prior to retirement.

At the time the Fund was created, there was a large pool of retired miners who were returning to the mines for brief periods in order to qualify for pensions. Further, due to the recent origin of the Fund, there were no miners with significant contribution histories. As a consequence, at that time it was reasonable to implement these distinct but legitimate goals through a single eligibility requirement. More than two decades have passed since the creation of the Fund. The passage of time long ago erased the justification for utilizing a single requirement to achieve these separate objectives. At present there is no pool of retired miners threatening destruction of the Fund by returning to work. In addition, many, if not the majority, of today's applicants have significant histories of signatory employment. Eligibility requirements based on such histories can now be framed so as to avoid destructive dilution of the Fund.

Any work for an employer who does not contribute to the Fund, if credited towards a pension for the worker, decreases the benefits available to all pensioners under a flat, equal payment plan such as the one in this case. Therefore, it is difficult to understand how signatory last employment for the short period of a single year can prevent dilution of the Fund so long as a pension will be awarded on the basis of a single year of signatory employment when combined with nineteen or more years of non-signatory employment in the industry. On its face, the requirement makes dilution inevitable.

The Trustees' second argument justifying the signatory last employment requirement is that the Taft-Hartley Act required some history of contributory employment as a condition precedent to a pension. The section referred to is actually an exception to the anti-bribery statute which permits payments by employers to employee representatives for use in authorized employee benefit plans. The pertinent language reads as follows:

"(a) It shall be unlawful for any employer or association of employers . . . to pay . . . or agree to pay . . . any money or other thing of value (1) to any representative of any of his employees . . .

\* \* \* \* \* \*

"(c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, *for the sole and exclusive benefit of the employees of such employer."* (Emphasis added.) 29 U.S.C. §§ 186(a) (1), (c) (5)

This language suggests that the statute forbids employee pension plans which award pensions on the basis of employment with non-contributing employers. Since such a situation is permitted by Resolution No. 63 and No. 83, it appears as though the Trustees may be violating the very statute by which they seek to justify their signatory last employment requirement. In other words, Taft-Hartley § 302(c) (5) seems to require that only that portion of an applicant's industry employment which is with signatory employers may be credited towards a pension from the Fund.

*Roark* proposed a third justification for a signatory last employment require-

ment which was not presented by the Trustees in that case. Since the Trustees have adopted that rationale in formulating Resolution No. 83 and presented it at oral argument, we are considering it here. That argument assumes that an employer's underlying motivation in contributing to a pension plan is to encourage long-term service and loyalty to himself. Taft-Hartley § 302(c) (5) was designed to permit an employer in conjunction with other employers in his industry to establish a pension plan for his own economic benefit. The bituminous coal industry is a highly competitive industry with sharply declining employment rolls. In addition, mechanization in the industry had sharply reduced the supply of workers capable of performing the required services. This has led to intense competition (between signatory and non-signatory operators) for the services of these skilled miners. In this economic context, the necessities of both signatory employers and their employees make it reasonable to deny pensions even to employees whose termination of signatory employment was not of their own choosing. The fact that miners not old enough to qualify for a pension are forced to leave the industry in order to keep alive their expectancy of a pension does not constitute the basis of arbitrariness in the signatory last employment requirement; rather that arbitrariness lies in the use of a test contained in a requirement rationally calculated to reward employee loyalty with flat, equal pension which test turns on the single fact of regular signatory employment during the year immediately preceding retirement.

The Trustees argue that this flaw in the signatory last employment requirement can be cured by the simple addition of a requirement of significant contributory employment. They submit that they have removed the difficulty by Resolution No. 83 which added a requirement of five years minimum signatory employment but retained the signatory last employment requirement. We do not agree.

If, as the Trustees argue, a major function of the Fund is to encourage skilled miners to remain with signatory employers in exchange for a retirement pension, then the Fund's eligibility requirements defeat this purpose. Resolutions No. 63 and No. 83 effectively require signatory operators to subsidize substantial amounts of non-signatory employment by granting pension credit for such employment. Furthermore, the signatory last employment requirement punishes applicants who devote the greater part of their working lives to signatory employment merely because their last full year of regular industry employment was not for a signatory employer. This result contradicts one of the major functions assigned to the requirement and causes the requirement to be inherently unreasonable. When applied to applicants in the plaintiff's position, the requirement of signatory last employment is not only unreasonable, but is also arbitrary and capricious.

The Sixth Circuit has stated recently, albeit in another context, that the essence of arbitrariness is the requirement of a fixed standard without permitting administrative discretion when necessary to apply the rule "in a manner fair and reasonable in light of all the circumstances." Southern Railway Company v. City of Morristown, 448 F.2d 288 (C.A. 6, 1971). The arbitrariness of the signatory last employment requirement is apparent from the stipulated facts, and, therefore, the Court holds that the requirement is arbitrary, capricious, and unreasonable.

This conclusion is fortified by the recent case of DePaoli v. Boyle, 144 U.S. App.D.C. 364, 447 F.2d 334 (decided June 25, 1971). That case also involved a denial of pension benefits under the United Mine Workers of America Retirement and Welfare Fund of 1950. DePaoli had spent forty-one years in the coal industry. His application for a pension set forth in detail his employment for the last twenty-nine of those years. Since he had not proven the fact of

employment for one full year with an operator signatory to the National Bituminous Coal Wage Agreement immediately prior to his retirement, his application was denied under the signatory last employment requirement of Resolution No. 63. The district court sustained the Trustees' motion for summary judgment on the authority of Roark v. Boyle, supra, and Collins v. United Mine Workers of America Welfare and Retirement Fund, 141 U.S.App.D.C. 387, 439 F.2d 494 (1970). In reversing that decision, the Court of Appeals for the District of Columbia, which had previously decided both *Roark* and *Collins,* stated:

" . . . DePaoli stands in the same position in regard to the signatory last employment requirement invalidated in Roark as did Roark and the other parties to that case and, perhaps more significantly, in the same position as the pension claimant in Collins v. United Mine Workers of America Welfare and Retirement Fund, supra, decided together with Roark. DePaoli had already filed his pension claim and his case in the District Court when Roark was decided." 447 F.2d p. 336)

As the Court in *DePaoli* pointed out, the revised requirements contained in Resolution No. 83 do not help applicants who filed for a pension prior to the date of the *Roark* decision. The plaintiff in the instant case falls into the same category as *DePaoli.* He filed his application on June 5, 1970, whereas the *Roark* decision was not rendered until August 14, 1970. His application, like DePaoli's, was denied for failure to satisfy the signatory last employment requirement which was struck down in *Roark* and *Collins.*

The most recent case that strengthens our conclusion is that of Bradley Belcher v. Boyle, decided in an unpublished opinion by Judge Jones of the District Court of the District of Columbia. That case dealt with the same question decided in *Roark* and now facing this Court. There the eleven plaintiffs were retired coal miners from fifty-five to sixty-two years of age who had worked for signatory mines for periods ranging from eight and a half years to sixteen and a half years. Their applications for pensions were filed between May 18, 1965 and October 11, 1968—all before the *Roark* decision. Each of their applications was denied because the applicant's last year of employment was not for a signatory mine as required under Resolution No. 63. The Court first interpreted *Roark* as invalidating Resolution No. 63 as to the four plaintiffs in that case, then it confronted the Trustees' argument that Resolution No. 83 was adopted to meet the criticism in *Roark.* In that respect, the Court stated:

"Any application received in the office of the Trust Fund prior to April 1, 1971, is to be subject to and governed by the regulations in effect on the date of receipt of such application, except any application which is received in the Trust Fund Office during the period August 14, 1970 (the date of the Roark opinion) through March 31, 1971.

\*　　\*　　\*　　\*　　\*　　\*

"Thus the pension rights of the 11 plaintiffs here, whose applications were filed and rejected prior to April 1, 1971, and indeed prior to August 14, 1970, are subject to the construction and application of Resolution 63. But that was the Resolution the Court of Appeals held to be illegally depriving Roark, Reese, Fuller and Collins of their pensions.

\*　　\*　　\*　　\*　　\*　　\*

"[Plaintiffs are held] in the same position as Roark, Reese, Fuller and Collins. There is no new resolution applicable to [them]. It is still Resolution 63, the very resolution that the

Court of Appeals found wanting in the Roark case. As Roark, Reese, Fuller and Collins presented the injustice of Resolution 63 by their actions, so too have the plaintiffs here. This case was pending before the Roark opinion. These plaintiffs are entitled to the same treatment as the Roark parties." (Memorandum Opinion, pp. 33–35)

Plaintiff's application, as in *Belcher*, under the provisions of Resolution No. 83, is to be controlled by Resolution No. 63 the material portion of which was invalidated by *Roark*. Thus, if the plaintiffs in *Belcher* were entitled to relief, then the plaintiff in this case should have the same relief.

It seems unjust for the Trustees, once having recognized the arbitrariness of a portion of Resolution No. 63 and after plaintiff had filed his claim, to pass another resolution subjecting him to the same arbitrary treatment which had been invalidated and to say they have cured the arbitrariness by inserting a new criterion that is irrelevant in this case. As heretofore indicated, the arbitrariness in Resolution No. 63 enabled a person who may have worked only one year in contributory employment to receive a pension; and it deprived another person who may have worked twenty or more years in contributory employment of a pension if he failed to work the last year with a signatory employer. It would compound the wrong to permit the Trustees, after plaintiff has earned his pension to deprive him of it by inserting a five year contributory provision in Resolution 83.

Plaintiff in this case is entitled to the same treatment as Roark and Collins. Accordingly, plaintiff's motion for summary judgment is sustained.

In the light of the conclusions reached, a discussion of the other questions raised by the parties is not deemed necessary.