Benjamin R. BURROUGHS, Plaintiff,

v.

**BOARD OF TRUSTEES OF the PENSION TRUST FUND FOR OPERATING ENGINEERS et al., Defendants.**

**No. C–73–2080 WHO.**

United States District Court,
N. D. California.

April 14, 1975.

As Amended July 25, 1975.

**170**

James M. Morris, Brewer, Patridge & Morris, Stockton, Cal., for plaintiff.

Johnston & Stanton, Thomas E. Stanton, Jr., McCarthy, Johnson & Miller, P. H. McCarthy, Jr., San Francisco, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ORRICK, District Judge.

This case was tried to the Court sitting without a jury on February 10 and 20, 1975. The Court having received oral and documentary evidence introduced by the parties at trial, and having duly considered said evidence and the points of law and authorities cited in the trial briefs of the parties, and having heard all the arguments of counsel, and being fully advised in the premises, now makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. This is a civil action under the Labor Management Relations Act of 1947 for injunctive, declaratory and monetary relief. Jurisdiction is conferred by 29 U.S.C. § 186(e) and 28 U.S.C. §§ 1331, 2201.

2. Plaintiff was born on August 30, 1911; he joined Local 3A of the International Union of Operating Engineers on August 7, 1943; he transferred to Local 3 of the International Union of Operating Engineers ("Local 3") on January 4, 1947; he maintained his membership in Local 3 from and after August 7, 1943.

3. On December 30, 1959, Local 3 and the predecessor in interest to the Associated General Contractors of California, Inc., executed the Trust Agreement, Pension Trust Fund for Operating Engineers.

4. By its terms the Trust Agreement, Appendix A thereto (together with all amendments and modifications to the Trust Agreement and Appendix A) and the applicable provisions of collective bargaining and other labor agreements with the Associated General Contractors of California, Inc. and other employers, form the Pension Plan of Local 3 ("the Pension Plan").

5. Under the terms of the Pension Plan, employers having collective bargaining agreements with Local 3 are referred to as "Individual Employers" or "Contributing Employers". Said Individual Employers are required to make payments to the Pension Trust Fund for Operating Engineers ("the Pension Fund") of sums of money measured by the number of hours worked by each employee of such Individual Employer for the purpose of providing retirement benefits and pensions for their employees and their beneficiaries.

6. As executed on December 30, 1959, the Trust Agreement (Article I, Section 4) defined "Covered Employee" as any employee of a Contributing Employer whose work or work classification is covered by a Collective Bargaining Agreement. Subsequently that definition was modified by an undated First Amendment to the Trust Agreement, so as to include all full time paid officers, and all employees classified as representatives (regardless of grade), administrative staff specialists, dispatchers and accountants on which Local 3 paid into the Pension Fund on the same basis that Individual Employers covered by the Master Agreement between the predecessor of the Associated General Contractors of California, Inc., and Local 3 paid on their employees who were Covered Employees. Thereafter, on March 7, 1966, that definition was again modified (by the Third Amendment to the Trust Agreement), so as to include all

employees of a Joint Apprenticeship Committee or Committee on which Local 3 is represented, and all employees of the Local 3 Credit Union on which the appropriate Joint Apprenticeship Committmittee or Credit Union or both pay into the Pension Fund on the same basis as Local 3 pays into the Pension Fund, excluding in the case of a Joint Apprenticeship Committee and the Credit Union those employees covered by a Labor Agreement with a Labor Organization.

7. The Pension Plan (Article A, Section 2, Second Revised Appendix A) defines "Pension Credit" as the years of service which are accumulated and maintained for Covered Employees in accordance with the Pension Plan. "Past Service Credit" is defined as periods of employment prior to an employee's Contribution Date to the extent credited in accordance with the Pension Plan, while "Future Service Credit" means periods of employment on and after the employee's Contribution Date to the extent credited in accordance with the Pension Plan. The "Contribution Date" is defined as January 1, 1958, or such later date as may be fixed by the Board of Trustees for a particular Bargaining Group and is the date applicable to the Bargaining Group in which the Covered Employee was employed when the first contribution to the Pension Fund was made on his behalf.

8. Local 3 has, at all times relevant, negotiated and executed Labor Agreements with employers in the construction industry, in part with associations of contractor employers and in part with individual contractor employers (including joint ventures). Throughout this period, the number of Individual Employers or Contributing Employers defined in the Trust Agreement) has expanded and the industries covered by labor agreements with Local 3 have likewise expanded. The assets of the Pension Fund have grown considerably and as of the date of trial total over $100 million. Individual Employers having or covered by agreements with Local 3 include the members of the Associated General Contractors; General Contractors Association of Hawaii; Construction Equipment Dealers of Northern California; Steel Fabricators and Erectors Council of Northern California, Northern Nevada and Utah; California Contractors Council; Utah Chapter of the Associated General Contractors; Pile Driving Contracting Association of Northern California, Northern Nevada and Utah; Nevada Chapter of the Associated General Contractors; Pacific Shipbuilding and Ship Repair Firms; Rock, Sand and Gravel Producers Association of Northern California; Dredging and Contractors Association of California, Nevada, Utah and Hawaii; Engineering and Grading Contractors Association; and other employer associations. These agreements establish, in pertinent part, a Covered Employee's bargaining group, rate of contribution to the Pension Fund ("Contribution Rate"), the effective date of contributions to the Pension Fund ("Contribution Date"), and a recognition clause, recognizing Local 3 as the exclusive collective bargaining agent of all employees covered by labor agreements and as outlined in the extensive job classifications listed therein.

9. At the time plaintiff applied for his pension, Article C, Section 7, Second Revised Appendix A, provided as follows:

"A Covered Employee shall be entitled to retire on a Disability Pension if he was or becomes totally disabled at a time when:

a. He has attained at least age 50 but has not attained age 65 and has at least 10 years of Pension Credit without a break in employment as defined in Article D, Section 5; or

b. he has not attained age 65 and has at least 15 years of Pension Credit, without a break in employment as defined in Article D, Section 5; and

c. if he meets the requirements in Subsections a. or b. above, he has also received two quarters of Future Service Credit, unless he is totally disabled on or before the Contribution Date for the Bargaining Group in which he was employed at the time he became disabled."

10. At the time plaintiff applied for his pension, Article C, Section 9, Second Revised Appendix A, provided as follows:

"A Covered Employee shall be deemed totally disabled upon determination by the Social Security Administration or its equivalent that he is entitled to a Social Security Disability Benefit or its equivalent in connection with his Old Age Survivors and Disability Insurance Coverage or its equivalent. The Board may at any time, or from time to time, require evidence of continued entitlement to such Social Security Disability Benefits or equivalent benefits."

11. Although an applicant for a social security benefit must meet the test of being disabled and also must meet an earnings requirement, when the Board of Trustees adopted the social security disability test, its sole focus was on the disability aspect, not on the earnings requirement.

12. On or about March 14, 1972, plaintiff suffered a myocardial infarction which rendered him totally disabled to perform his occupation as an employee of the construction industry.

13. The Social Security Administration deemed plaintiff totally disabled, but denied him a Social Security Disability Benefit for the sole reason that he had not met the Social Security earnings requirement.

14. The Pension Plan, in Article D, Section 5.a. provides as follows:

"a. General Rule. It shall be considered a break in employment and a Covered Employee's previously accumulated Pension Credit shall be cancelled if after the January 1 coinciding with or next following his Contribution Date he fails to earn one quarter of Future Service Credit in a period of three consecutive calendar years, unless such Covered Employee was permanently and totally disabled on or before January 1 of the year in which contributions commenced for the Bargaining Group in which he was employed at the time he became disabled."

This rule is known as the Break-in-Employment Rule.

15. At the time plaintiff applied for his pension, Article D, Section 6.a. read as follows:

"Under the circumstances described below, an Employee shall have his Pension Credits vested and the break rule set forth in Section 5 of this Article D shall not operate to deprive him of his previously accumulated Pension Credit.

(1) Beginning January 1, 1972, an Employee's Pension Credit is vested if he (a) has accumulated 25 years of Pension Credit or (b) is at least age 45 and has accumulated at least 10 years of Pension Credit.

(2) Between January 1, 1965 and January 1, 1972, an Employee's Pension Credit was vested if he (a) had accumulated 25 years of Pension Credit or (b) was at least age 55 and had accumulated at least 10 years of Pension Credit.

(3) Before January 1, 1965, an Employee's Pension Credit was vested if he was at least age 55 and had accumulated at least 10 years of Pension Credit."

16. Under the terms of the Pension Plan, once a Covered Employee's pension credit vests, the Break-in-Employment Rule does not operate to deprive him of his previously accumulated pension credit.

17. Local 3 has maintained, and at all times pertinent to this litigation maintained, employment dispatch procedures for the dispatch of Local 3

members and others to jobs throughout Local 3's multi-state territory and jurisdiction. The employment received by those dispatched from the hiring halls is subject to economic fluctuations, weather and other factors peculiar to the construction industry. An operating engineer may work for numerous employers during his working life. The duration of the jobs available may and does significantly fluctuate.

18. Between April 1, 1942, and December 31, 1957, plaintiff worked in the geographical jurisdiction of Local 3 on work of the type covered by labor agreements with Local 3. During this period he accumulated fifteen and one-fourth years of pension credit, all of which was past service credit.

19. Between January 1, 1958, and March 14, 1972, according to the records of the Pension Fund, plaintiff earned an additional one and one-half years of pension credit, so that at the time of his retirement he had accumulated a total of sixteen and three-fourths years of pension credit.

20. Between January 1, 1958, and March 14, 1972, plaintiff, with few exceptions, maintained himself available for employment by registering in the employment offices maintained by Local 3 and contacting said offices regularly. During said period of time he worked for numerous employers. He received dispatches to most of these and, when dispatches from Local 3 were not forthcoming, he sought employment on his own. Even in those instances when plaintiff was working for employers to whom he had not been dispatched, he generally maintained his registration for employment. His wife, during these periods, would remain at home so that she could notify plaintiff in the event telephone calls from the Local 3 employment offices were forthcoming. They were not.

21. In order to improve his chances of being dispatched to employment, plaintiff at various times registered in employment offices outside the area of his residence, as well as within, and, in 1969, enrolled at Rancho Murietta, a training facility for operating engineers, in order to improve his skills and thus his chances of being dispatched to employment.

22. On October 31, 1972, plaintiff applied for a disability pension based upon his total disability within the construction industry; his application was received by the Board of Trustees on November 6, 1972; plaintiff was informed on May 3, 1973, that, although he did not appear to qualify for a pension, his application would be presented to the Pension Approvals Committee for consideration; on May 17, 1973, the Pension Approvals Committee met and determined that plaintiff did not qualify for a pension on the grounds that he had incurred a break in employment at the end of calendar year 1960 and again at the end of calendar year 1968; on July 12, 1973, plaintiff appealed the decision of the Pension Approvals Committee to the Secretary of the Pension Trust Fund; plaintiff's appeal was heard before an Appeals Committee on August 13, 1973; thereafter, the Appeals Committee upheld the action of the Pension Approvals Committee.

23. As a result of the first break in employment, at the end of calendar year 1960, all of plaintiff's previously accumulated past service pension credits were cancelled pursuant to the terms of the Pension Plan.

24. Plaintiff's first break in employment was based on a finding that he had worked fewer than 350 hours for Contributing Employers in each year during the three-year period from January 1, 1958, to December 31, 1960. During 1958 plaintiff worked well over 350 hours, performing his normal function as an equipment operator, but his employer was not a Contributing Employer. During 1959 and 1960 plaintiff had brief jobs with Contributing Employers, received through the union dispatch office, but the number of hours worked on such jobs totaled less than 350 in each

year. During this period plaintiff regularly reported to the union hall to seek work, and never refused any job he received from the union dispatch office.

25. The first notification to the participants in the Pension Plan, including plaintiff, of the Break-in-Employment Rule was on or about April 27, 1960.

26. Had the Board of Trustees not applied the Break-in-Employment Rule to plaintiff at the end of 1960, plaintiff would have had his pension rights vested upon his attaining age 55 years on August 30, 1966. Having had his rights then vested, the Break-in-Employment Rule could not have cancelled plaintiff's previously accumulated pension credit.

27. As a result of the application of the Break-in-Employment Rule to plaintiff by the Board of Trustees, plaintiff has been denied a monthly pension benefit since November 1, 1972, the time he was first eligible for same.

28. Had plaintiff been granted a pension upon his application for same, he would have been able to enjoy the benefits conferred by the Pensioned Operating Engineers Health & Welfare Trust Fund.

29. As a result of plaintiff's being denied a disability pension, he was required to expend his own funds for medical care, a portion of which would have been covered by the Pensioned Operating Engineers Health & Welfare Trust Fund.

30. As a further result of plaintiff's being denied a pension, plaintiff was required to expend and did expend sums of money to purchase medical insurance to cover injuries and illnesses that would have been covered by the Pensioned Operating Engineers Health & Welfare Trust Fund.

31. Since the beginning of the Pension Fund, plaintiff has been a union member and worked as an operating engineer in the construction industry. He has worked over 3,000 hours for Contributing Employers, and contributions to the Pension Fund have been made by such employers on his behalf.

32. The Break-in-Employment Rule was included in the Pension Plan upon the recommendation of the actuaries for the Pension Plan. One of the actuarial assumptions upon which the Pension Plan was then based, and continues to be based, was the rate at which employees would withdraw from employment as operating engineers in the area covered by the Pension Plan. Among the persons who are actuarially assumed to have withdrawn from such employment are those who incur a break in employment under the Rule. Similar rules are included in many other comparable pension plans within the industry.

## CONCLUSIONS OF LAW

■■ 1. This Court has jurisdiction under 29 U.S.C. § 186 and 28 U.S.C. §§ 1331 and 2201 to review allegations relating to violations of the statutory requirements of Section 302(c)(5) of the Labor Management Relations Act (29 U.S.C. § 186(c)(5)) under which the Pension Fund was created. The scope of judicial review in this action is restricted to determining whether the action of the Board of Trustees of the Pension Fund was arbitrary or capricious. Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744, 747 (1963), cert. den. 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964); Roark v. Lewis, 130 U.S. App.D.C. 360, 401 F.2d 425, 427 (1968).

"1A. The Court has jurisdiction to review the Board of Trustee's administration of the trust fund as well as the specific terms of the trust plan. Lugo v. Employees Retirement Fund of the Illum. Prod. Indus., 366 F.Supp. 99 (E.D.N.Y.1973).

■ 2. The Board of Trustees of the Pension Fund is required by the Trust Agreement, by Section 302(c)(5) of the Labor Management Relations Act, and by principles of law and equity, to administer the trust and manage the funds and assets of the trust for the

exclusive benefit of its participants and their beneficiaries.

3. The Board of Trustees of the Pension Fund is required by the Trust Agreement, by Section 302(c)(5) of the Labor Management Relations Act, and by principles of law and equity, to establish criteria for eligibility for benefits that are just and reasonable, and not arbitrary, restrictive, or which have as their purpose and effect the unnecessary exclusion of participants from eligibility for benefits.

3A. A failure of the Board of Trustees to administer the trust in a manner lacking in fundamental due process is in substance tantamount to a basic structural defect in the trust. As a practical matter, whether the unjust exclusion of a pensioner is obtained from the exclusive provisions of the trust fund itself or from the arbitrary and exclusionary implementation procedures of the trustees, the ultimate effect is that the trust is not operated for the 'sole and exclusive benefit of the employees'. *Lugo v. Employees Retirement Fund of the Illum. Prod. Indus., supra.*"

4. Under the requirements of Section 302(c)(5) of the Labor Management Relations Act, the Break-in-Employment Rule, when taken together with the provisions for vesting of pension credits, is reasonable on its face, and its adoption by the Board of Trustees was not arbitrary or capricious.

5. Under the requirements of Section 302(c)(5) of the Labor Management Relations Act, and under principles of law and equity, application of the Break-in-Employment Rule to plaintiff at the end of 1960 was arbitrary and capricious under the circumstances, in that plaintiff was not notified of the Rule until over two years after the Rule began operating to cut off his accrued pension rights. *Kosty v. Lewis, supra.*

6. Under the requirements of Section 302(c)(5) of the Labor Management Relations Act, and under principles of law and equity, since the Break-in-Employment Rule by its terms allows a participant three years in which to accumulate the required minimum hours of contributory employment to remain a Pension Plan participant, plaintiff should have been allowed three years in which to accumulate said required minimum hours from the date plaintiff was put on notice of the Rule. Failure of the Board of Trustees to allow plaintiff said three years from the date of notice was arbitrary and capricious in light of all of the circumstances of plaintiff's employment history, both before and after adoption of the Pension Plan. *Lavella v. Boyle,* 144 U.S.App.D.C. 35, 444 F.2d 910 (1971), cert. den. 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971).

7. To the extent the definition of *total disability* within the Pension Plan requires a participant to receive a social security disability award, or its equivalent, said requirement is unreasonable on its face and as applied to plaintiff in that the earnings aspect of such an award was not intended to be a focus for determining eligibility for disability benefits under the Pension Plan.

8. As a direct and proximate result of the violations of Section 302 of the Labor Management Relations Act set forth hereinabove, plaintiff has been damaged in being denied a monthly pension benefit from November 1, 1972, to date, and is thus entitled to the sum of the monthly pension benefits denied him, together with interest on each said monthly pension benefit at the legal rate, from the due date of each payment to the date of judgment herein.

9. As a further direct and proximate result of the violations of Section 302 of the Labor Management Relations Act as set forth hereinabove, plaintiff is entitled to those medical expenses that would have been covered by the Pensioned Operating Engineers Health & Welfare Trust Fund had plaintiff's pension not been unlawfully denied him, in an amount consistent with

the terms of said Pensioned Operating Engineers Health & Welfare Trust Fund.

10. As a further direct and proximate result of the violations of Section 302 of the Labor Management Relations Act as set forth hereinabove, plaintiff is entitled to a permanent injunction requiring the Board of Trustees of the Pension Fund to pay to plaintiff each month a pension benefit consistent with the terms of the Pension Fund and for so long as plaintiff remains eligible for same under the terms of the Pension Plan.

It is hereby ordered that plaintiff will prepare, serve and file a certificate of counsel regarding attorney's fees and a judgment in accordance with the foregoing findings of fact and conclusions of law, in form approved by defendants, on or before April 25, 1975.