[Civ. No. 45315. First Dist., Div. One. Sept. 25, 1980.]

CAROLYN MALONE, Individually and as Personal Representative, etc., Plaintiff and Appellant, v.
WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST, Defendant and Respondent.

COUNSEL

Clifford B. Malone, Jr., for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Dennis K. Bromley and Robert A. Gordon for Defendant and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—During his lifetime, Gaylord Malone commenced a superior court action against the Western Conference of Teamsters Pension Trust (the Trust) seeking thereby, among other things, to establish his right to a disability pension under a pension plan (the Plan) administered by the Trust. Pending the action Gaylord Malone died, and it was continued in the name of his widow, Carolyn Malone, individually as to her derivative rights and as his personal representative. The superior court thereafter entered judgment in favor of the Trust.

The present plaintiff, Carolyn Malone, in her individual and representative capacities, has appealed from the judgment.

Our concern on the appeal is the Plan, which was established under the authority of section 302 of the federal Labor Management Relations Act of 1947 as amended, which is better known as, and more conveniently found in, 29 United States Code section 186. We shall hereafter refer to the statute as Section 186.

The issue of the appeal is whether the Plan, at least as it was applied to Gaylord Malone, was arbitrary and capricious. And since we are concerned with uncontroverted evidence, and the interpretation of a written instrument in aid of which no extrinsic evidence was offered, the issue is for us one of law, unaffected by the findings of the superior court. (See *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

Section 186 was designed to prevent and penalize corruption in union-employer affairs at the expense of employee union members. (*Roark* v. *Boyle* (D.C.Cir. 1970) 439 F.2d 497, 501; *Bricklayers, etc.,*

*U.15, Fla.* v. *Stuart Plaster. Co., Inc.* (5th Cir. 1975) 512 F.2d 1017, 1024-1025; *Collins* v. *United Mine Workers of Am. W. & R. Fund of 1950* (D.D.C. 1969) 298 F.Supp. 964, 970 [affd. 439 F.2d 494].) It proscribes the payment, loan, or delivery of "any money or other thing of value" by an employer to the "representative of any of his employees" and provides criminal sanctions for its violation. But it then establishes "exceptions," which appear to have obtained far more judicial attention than the expressed principal purpose.

Among Section 186's exceptions is its subdivision (c)(5), which permits collective bargaining agreements under which an employer may contribute to a *trust fund* for his employees' welfare or retirement, which contributions shall be used *"for the sole and exclusive benefit of the employees of such employer"* (italics added), and their families and dependents. Such payments are held in trust by trustees made up equally of employer and union representatives. If the contributions are made for the payment of employees' pensions they cannot be used for any other purpose.

The Trust and Plan were founded under the above described exception to the proscription of Section 186.

■ It is now settled that jurisdiction over actions such as that before us lies concurrently with the federal and state courts of the nation. (See *Cox* v. *Superior Court* (1959) 52 Cal.2d 855, 861 [346 P.2d 15]; *Local No. 2, etc.* v. *Paramount Plastering, Inc.* (9th Cir. 1962) 310 F.2d 179, 183 [cert. den., 372 U.S. 944 (9 L.Ed.2d 969, 83 S.Ct. 935)]; *Branch* v. *White* (1968) 99 N.J.Super. 295 [239 A.2d 665]; *Insley* v. *Joyce* (N.D.Ill. 1971) 330 F.Supp. 1228, 1231-1232.)

The Plan, as noted, resulted from collective bargaining between unions of the Western Conference of Teamsters (hereafter the Union) and the employers of their members. It was created around 1956. As originally established and as amended by its trustees (the Trustees) it provided, as here relevant, the following.

An employee's disability retirement benefit will be based in substantial part on his "contribution ratio." The length of his employment and thus the total of his employer's contributions will, according to a mathematical formula, determine the amount of his pension entitlement.

"An Employee [as here relevant] shall be eligible for a Disability Retirement Benefit...if...(b) *he has had at least 15 years of Unbroken Service*, [and] (d) he is disabled and is receiving Disability Insurance Benefits under the Federal Social Security Act,..." (As will be seen, the words which we have emphasized have created the appeal's principal issue.)

The material facts of the case are uncontroverted.

In 1965, after more than *16 consecutive years* of employment as a teamster (i.e., a truck driver), of membership in the Union, and of employer contributions on his behalf from about the time of the Plan's creation, Gaylord Malone, for some reason undisclosed by the record, changed to a different kind of employment. *He had thus established "at least 15 years of unbroken" employment* as a "covered employee" of the Plan. Up to that point his employers had always made the required contributions on his account to the Trust. About four years later, in 1969, he resumed his occupation as a teamster and his membership in the Union, thus regaining his status as a covered employee, for whom his employer resumed contributions to the Trust. In 1973 he suffered disability for which he received benefits under the federal Social Security Act.

Gaylord Malone's application to the Trust for disability retirement benefits was rejected for the reason that he had *not* had "at least 15 years of unbroken service" *immediately preceding his application.*

The instant action followed.

In the superior court the Trust contended that the Plan's above noted provision, that a disability retirement applicant must have had *at least 15 years of unbroken service*, must be construed to mean 15 years of such service *immediately preceding the disability.* (We, but arguendo only, so construe the Plan for the purpose of the appeal.)

The court agreed, and among others, made the following findings:

"Gaylord Malone incurred a break in service—as that term is defined in the Western Conference of Teamsters Pension Plan ('Plan')—on December 31, 1967.

" . . . Under the clear terms of the Plan, Malone's prior service credits were canceled and forfeited when he incurred his break in service.

" . . . Gaylord Malone was never eligible for a Disability Retirement Benefit and Carolyn Malone was and is not eligible for a Survivor Benefit under the Plan. . . .

" . . . Defendant did not act arbitrarily, capriciously, or in bad faith in handling Malone's claim for benefits."

■ We note preliminarily that a *trust*, and *fiduciary*, relationship existed between the Trustees who promulgated and administered the Plan, and employees situated as was Gaylord Malone. (See 29 U.S.C. § 186; *Bricklayers, etc., U.15, Fla.* v. *Stuart Plaster. Co., Inc., supra*, 512 F.2d 1017, 1025; *Lee* v. *Nesbitt* (9th Cir. 1971) 453 F.2d 1309, 1311; *Roark* v. *Lewis* (D.C.Cir. 1968) 401 F.2d 425, 427-428; *Insley* v. *Joyce, supra*, 330 F.Supp. 1228, 1234.) The Plan will properly be construed in light of the well-known requirements of such a relationship.

■ While ordinarily courts will not interfere with a bargained-for Section 186 plan, or with the trustees' acts or discretion under it, they will nevertheless do so where one or the other is found to be *unlawful*, or *arbitrary*, or *capricious (Lee* v. *Nesbitt, supra*, 453 F.2d 1309, 1311; *Roark* v. *Boyle, supra*, 439 F.2d 497, 501; *Roark* v. *Lewis, supra*, 401 F.2d 425, 427; *Insley* v. *Joyce, supra*, 330 F.Supp. 1228, 1234; *Collins* v. *United Mine Workers of Am. W. & R. Fund of 1950, supra*, 298 F. Supp. 964, 968), or not *fair and equitable (Teston* v. *Carey* (D.C.Cir. 1972) 464 F.2d 765, 769), or *unreasonable (Lee* v. *Nesbitt, supra*, p. 1311; *Roark* v. *Boyle, supra*, p. 501).

■ Employer contributions under the Plan such as were made on account of Gaylord Malone constitute benefits *earned* by the employees. They are "seen as *quasi-salary*, a portion of income which the employee, acting through his union, chooses to have deferred so as to provide for or supplement retirement income." (Italics added; *Roark* v. *Boyle, supra*, 439 F.2d 497, 504.) And: "'It is only just, said Congress, that the employee whose hour's work required the employer to make a payment . . . to the trust fund be assured of reaping the benefit of that payment.'" (*Crawford* v. *Cianciulli* (E.D.Pa. 1973) 357 F.Supp. 357, 373.)

For administrative simplification, "pooling" of the employer contributions is permitted, making it unnecessary to key an employee's pension rights to the precise contributions made on his account. But such rights will nevertheless depend to a substantial degree upon the contributions the employee has *earned*. Against a contention that such "pooled funds" might be used to the partial or total exclusion of an employee for whose account a portion of them was made, it was held: "A pooled fund is simply one large fund contributed to by a number of employers, instead of many smaller funds each contributed to by only one employer. For simplicity of administration and reduction of overall expense, Congress, it seems, allowed employers, by that portion of 302(c) (5) in parentheses, to use pooled funds. But surely it is clear that employers contributing to any pension fund are doing so only for the benefit of their own employees. The fact that the fund benefits as a whole by the commingling of all employer contributions does not overcome the presumption that employers are acting, to an overwhelming extent, in the interests of only their own respective employees when contributing to pooled pension funds." (*Raymond* v. *Hoffmann* (E.D.Pa. 1966) 284 F.Supp. 596, 601, fn. omitted; and see *Roark* v. *Boyle, supra*, 439 F.2d 497, 502.) And patently, neither the employer nor the employee under such a plan contemplated that a trust, or its trustees, might respect the pension rights of some, and reject those of other, of the employees for whose accounts substantial contributions had been made.

It will also be seen that deprival of an employee's pension rights so earned by him constitutes in legal effect a *forfeiture*, the imposition of which is abhorrent to our law, and to equity. ▪ "The law traditionally disfavors forfeitures and statutes [and contracts] imposing them are to be strictly construed." (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; and see *Irwin* v. *Irwin* (1977) 69 Cal.App.3d 317, 322 [138 Cal.Rptr. 9].) "Of two or more possible constructions, 'the construction which avoids a forfeiture should be favored.'" (*Flagg* v. *Andrew Williams Stores, Inc.* (1954) 127 Cal.App.2d 165, 176 [273 P.2d 294].) And the inequity of such a forfeiture must reasonably be deemed compounded when occasioned by the act of one bearing a fiduciary or trust relationship to another.

We consider now authoritative holdings of federal courts which appear to be the principal tribunals in which issues under Section 186 are litigated. (See 29 U.S.C.A. § 186 and Annots. thereto.)

A Section 186 pension plan provided that a worker, regardless of his years of employment or the amount of his employers' contributions, was ineligible for its benefits unless he had been so employed during his *final year* by a contributing employer. (No substantial difference exists between such a provision and that of the case before us; each would forfeit the employee's previously earned benefits upon the fortuity of noncontinuous employment by a contributing employer to the day of his disability or retirement.) At least five times that provision of the plan was judicially found arbitrary, capricious, unreasonable, and therefore unlawful. We quote from those authorities in the following paragraph: "[T]he manner in which the Trustees have perpetuated the final year of service for a signatory employer requirement...is not fair and equitable;..." (*Teston* v. *Carey, supra,* 464 F.2d 765, 769.) "'To exact a requirement that irrespective of the number of years he may have been employed in such mines, he must have done likewise during the very last year of his employment in the coal industry, is unreasonable, arbitrary and capricious.'" (*Roark* v. *Boyle, supra,* 439 F.2d 497, 501.) "[I]t is...clear that the longer an applicant has worked for contributing employers, the more direct connection there is between his labor and the sums paid to the trustees on his behalf.... If the Fund's purpose is to pay benefits to contributing employers' employees (whose work generated the contributions), it is difficult to see how such a requirement promotes that purpose. It makes employees like these appellants sacrifice an otherwise valid pension claim because they worked a relatively short time for non-contributing operators. The contributions which signatory operators made on their behalf did not evaporate as a result of their later employment with non-signatories." (*Roark* v. *Lewis, supra,* 401 F.2d 425, 428.) "The arbitrariness of the signatory last employment requirement is apparent from the stipulated facts, and, therefore, the Court holds that the requirement is arbitrary, capricious, and unreasonable." (*Patterson* v. *United Mine Workers of America W. & R. Fund* (E.D.Tenn. 1971) 346 F.Supp. 11, 15.) "The unfairness of the requirement is patent in respect to a person, such as this plaintiff, who for many years worked in a signatory coal mine, but during the last year of his work in the industry was constrained by circumstances to accept employment in a non-union mine. On the other hand, a person could have worked during his entire career in non-union mines and yet receive a pension if he managed to secure employment in a union mine for a single year immediately preceding his retirement although his participation in the creation of the Fund would be negligible. Such results are unfair and unreasonable and border on the absurd. [¶] The Court concludes that the requirement in question is arbitrary and capricious,

and should be set aside and held invalid. Since the plaintiff meets all the other requirements, he is entitled to a pension." (*Collins* v. *United Mine Workers of Am. W. & R. Fund of 1950, supra*, 298 F.Supp. 964, 970.)

In *Lee* v. *Nesbitt, supra*, 453 F.2d 1309, a Section 186 pension plan provided (p. 1311): "'If a person does not work in Covered Employment for at least 200 days in any period of three consecutive calendar years..., it shall constitute a break in employment and his previous pension credits shall be cancelled.'" (Here again the "break in employment" provision is found reasonably indistinguishable from the "unbroken service" requirement of the case at bench.) Finding the provision "unreasonable on its face," the court stated (pp. 1311-1312): "Section 302 requires that a pension trust be 'for the sole and exclusive benefit of employees.' The trustees of such a trust, while possessing a large measure of discretion in prescribing conditions of eligibility for benefits, owe a fiduciary duty to the employees and may neither impose unreasonable conditions of eligibility nor act arbitrarily in determining who is eligible.... Lee had earned and was entitled to at least 15 years credits, having worked prior to that time without interruption. He was thus eligible for a pension on that date, save for the fact that he had not reached the age of retirement."

*Crawford* v. *Cianciulli, supra*, 357 F.Supp. 357, concerned a Section 186 plan which would divest an employee of his pension rights upon a "break" in accredited service regardless of its length, or the employer contributions made thereunder. The court there concluded that under Section 186 "an employee need only have some history of contributory employment" (p. 370), and that the statute's "'standards...are met when benefits are restricted to persons who are *or who have been* covered active employees. This is the employee group constituting the "sole" beneficiaries.'" (Italics added; p. 375.)

Other authority on the issue under review follows: "Only employees *and former employees* of employers who are lawfully contributing to a union pension trust fund may qualify as beneficiaries of a Section 302 trust." (Italics added; *Moglia* v. *Geoghegan* (2d Cir. 1968) 403 F.2d 110, 116 [cert. den., 394 U.S. 919 (22 L.Ed.2d 453, 89 S.Ct. 1193)].) "The standards [of sec. 186]...are met when benefits are restricted to persons who are *or who have been* covered active employees." (Italics added; *Blassie* v. *Kroger Company* (8th Cir. 1965) 345 F.2d 58, 70.) "[A] principal architect of the legislation [i.e., sec. 186], explained in

the debates that 'the purpose of the provision is that the welfare fund shall be a *perfectly definite fund*, that its purposes shall be that each employee can know what he is entitled to, can go to court and enforce his rights in the fund, and that it shall not be, therefore, in the sole discretion of the union or the union leaders and usable for any purpose which they may think is to the advantage of the union or the employee.' 93 Cong.Rec. 4876 (1947). . . ." (*Bricklayers, etc., U.15, Fla.* v. *Stuart Plaster. Co., Inc., supra,* 512 F.2d 1017, 1025.)

■ We are of the opinion that reason, and the foregoing principles and judicial authority, mandate a conclusion that the Plan, as interpreted by the Trust and as applied to Gaylord Malone, was arbitrary, capricious, unreasonable, and unlawful. The judgment of the superior court will accordingly be reversed.

We have not failed to consider authority upon which the Trust principally relies: *Giler* v. *Board of Sheet Metal Workers of So. Cal.* (9th Cir. 1975) 509 F.2d 848; *Burroughs* v. *Board of Tr. of Pens. Tr. F. For Op. Engrs.* (N.D.Cal. 1975) 398 F.Supp. 168 (affd. 542 F.2d 1128, cert. den. 429 U.S. 1096 [51 L.Ed.2d 543, 97 S.Ct. 1113]); *Thurber* v. *Western Conf. of Teamsters Pens. Plan* (9th Cir. 1976) 542 F.2d 1106; *Wilson* v. *Board of Trustees, etc.* (9th Cir. 1977) 564 F.2d 1299.

In *Giler* v. *Board of Sheet Metal Workers of So. Cal., supra,* 509 F.2d 848, the court found a "break-in-service" provision of a pension plan valid where Giler *did not* have the "required 20 years of pension credits" *before* the break. (Here Gaylord Malone *did* have the required 15 years before the break.) It was held that the trustees had "broad discretion in setting eligibility rules," citing *Roark* v. *Lewis, supra,* 401 F.2d 425, and *Lee* v. *Nesbitt, supra,* 453 F.2d 1309. But as we have pointed out, it was *Roark* v. *Lewis* which held (p. 428): "[I]t is . . . clear that the longer an applicant has worked for contributing employers, the more direct connection there is between his labor and the sums paid to the trustees on his behalf. . . . If the Fund's purpose is to pay benefits to contributing employers' employees (whose work generated the contributions), it is difficult to see how such a requirement promotes that purpose. It makes employees like these appellants sacrifice an otherwise valid pension claim because they worked a relatively short time for non-contributing operators. The contributions which signatory operators made on their behalf did not evaporate as a result of their later employment with non-signatories." And it was *Lee* v. *Nesbitt*, finding a

"break-in-service" provision "unreasonable on its face," which held (pp. 1311-1312): "Section 302 requires that a pension trust be 'for the sole and exclusive benefit of employees.' The trustees of such a trust, while possessing a large measure of discretion in prescribing conditions of eligibility for benefits, owe a fiduciary duty to the employees and may neither impose unreasonable conditions of eligibility nor act arbitrarily in determining who is eligible. . . . Lee had earned and was entitled to at least 15 years credits, having worked prior to that time without interruption. He was thus eligible for a pension on that date, save for the fact that he had not reached the age of retirement."

In *Burroughs* v. *Board of Tr. of Pens. Tr. F. For Op. Engrs., supra,* 398 F.Supp. 168, the *only* issue before the court concerned the trustees' failure to notify Burroughs of the break-in-service rule "until over two years after the Rule began operating to cut off his accrued pension rights" (p. 175). (See also *Burroughs* v. *Bd. of Trustees of Pension Trust, etc.* (9th Cir. 1976) 542 F.2d 1128, 1130.) The issue of the rule's *validity* was *not* before the court. The court, apparently without argument or other consideration, recited that "the Break-in-Employment Rule . . . is reasonable on its face, and its adoption by the Board of Trustees was not arbitrary or capricious" (p. 175), and then ruled that the *administration* of the pension plan was *arbitrary* and *capricious* as to Burroughs. ■ It is axiomatic that judicial statements of law on points not "raised or considered" or "disputed or argued" lack precedential or authoritative value. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 698, p. 4615.)

In *Thurber* v. *Western Conf. of Teamsters Pens. Plan, supra,* 542 F.2d 1106, Thurber *did not* (as Gaylord Malone *did*) have the required 15 years of covered employment before his "break-in-service." But he was advised by the pension plan's administrator "that everything appeared to be in order" (p. 1107), and that he was entitled to a pension. After some months of delay the pension was denied him. The issue in *Thurber* was whether the trustees were equitably *estopped,* and the trial and appellate courts held that they were not. Again the validity of the "break-in-service" rule as to an employee with the required amount of service for a pension was not at issue, or considered. And it is notable that the court iterated the rule (pp. 1108-1109) that: "'Only employees *and former employees* of employers who are lawfully contributing to a union pension trust fund may qualify as beneficiaries of a Section 302 trust.'" (Italics added.)

In *Wilson* v. *Board of Trustees, etc., supra,* 564 F.2d 1299, the employee, again unlike Gaylord Malone of the case before us, did *not* have the necessary period of "covered employment" before his "break-in-service" to trigger eligibility for a pension. The court found that as to Wilson, the break-in-service rule was not arbitrary and capricious.

These cases upon which the Trust heavily relies lend it little aid. To the extent, and if, they are inconsistent with the authority we have gathered, we are persuaded that their effect is overcome by the preferable rationale, the greater weight, and the fairness and equity, of contrary authority.

■ We have also considered the Trust's contention that Gaylord Malone had waived his pension rights by accepting a "cash termination benefit of $433.39," upon the assurance of the Trustees that "there is no way we can heal your break in service from 1967 through the time you became covered again in 1969." We have rejected it. Patently, a trustee or trust may not so benefit from misinformation furnished a beneficiary of the trust, whether deliberate or unintentional. And although pleaded, the defense does not appear to have been pressed in the superior court, for findings upon that issue were not sought by the Trust, nor made by the court. Such a point not fairly raised at the trial will not be considered on appeal. (See *American Machine etc. Co.* v. *Golden State Lanes, Inc.* (1967) 253 Cal.App.2d 855, 859 [61 Cal.Rptr. 554].)

We further note that in 1974 (following the times and events which are the subject of this appeal) Congress, recognizing the growing abuse of Section 186 pension funds, had codified the principles which we have followed. (See 29 U.S.C. § 1053; *Wilson* v. *Board of Trustees, etc., supra,* 564 F.2d 1299, 1302; *Giler* v. *Board of Sheet Metal Workers of So. Cal., supra,* 509 F.2d 848, 849, fn. 1.) The massive litigation of such issues (see Annots. to 29 U.S.C.A. § 186) appears to be nearing an end.

■ Yet another issue remains for our consideration. It concerns the Trust's liability for plaintiff Carolyn Malone's attorney fees. Through the efforts of counsel, substantial benefits will undoubtedly be conferred by our holding upon others situated as was Gaylord Malone or his widow. Equitable considerations reasonably suggest that for these reasons, and from the time and costs expended in the vindication of Gaylord Malone's pension rights, the trust relationship of the parties, and the obvious disparity of their financial and legal representational resources,

such attorney fees should be allowed. And we discern high federal judicial authority that they may be allowed under principles of equity in cases such as this. (See *Burroughs* v. *Bd. of Trustees of Pension Trust, etc., supra*, 542 F.2d 1128, 1131-1132.) We choose to follow that authority.

It is found unnecessary to consider other contentions raised by the parties, including the argument that the Plan's requirement that a pension applicant must have "had at least 15 years of Unbroken Service," may not reasonably be construed, as contended by the Trust, to require such unbroken service *"immediately prior"* to the pension application or the disability, and (2) that a Section 186 plan may provide a reasonable period of employer contributions before the affected employee gains entitlement to its benefits.

The judgment is reversed. The superior court will fix and award plaintiff's reasonable attorney fees for services rendered in the action and on this appeal, and thereafter enter such a judgment in favor of plaintiff Carolyn Malone as is not inconsistent with the views we have expressed.

Newsom, J., concurred.

**GRODIN, J.,** Concurring.—I arrive at the same destination as my colleagues, but by a somewhat different route.

They, and the parties, implicitly assume that federal law controls this matter, and I agree. (Cf. *Rehmar* v. *Smith* (9th Cir. 1976) 555 F.2d 1362, 1368-1369.) I agree also that there is substantial authority for the propositions that as to pre-ERISA[1] disputes the "sole and exclusive benefit" phrase contained within section 302(c)(5) of the Labor Management Relations Act of 1947, 29 United States Code section 186(c)(5), gives courts jurisdiction to determine whether challenged provisions of a given pension fund constitute a "structural defect" in violation of that section (e.g., *Burroughs* v. *Bd. of Trustees of Pension Trust, etc.* (9th Cir. 1976) 542 F.2d 1128, 1130); and that a "structural defect" may exist where the trustees have written unreasonable conditions of eligibility which arbitrarily exclude employees from benefits

---

[1]The Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq., provides complex requirements for the vesting of rights under pension plans. (See, e.g., § 1053(b)(1)(F).) Neither party contends that ERISA is applicable to this proceeding.

(e.g., *Johnson v. Botica* (7th Cir. 1976) 537 F.2d 930, 935; *Alvares v. Erickson* (9th Cir. 1975) 514 F.2d 156, 166-167; *Roark v. Lewis* (D.C. Cir. 1968) 401 F.2d 425, 427; *Souza v. Trustees of Western Conference, etc.* (N.D.Cal. 1978) 460 F.Supp. 843, 844-845).

When attention focuses upon the criteria for determining reasonableness or arbitrariness, however, the picture becomes fuzzy. As the court said in *Roark v. Lewis, supra,* 401 F.2d at page 429: "The court is fully cognizant of the internal pressures exerted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size or the number of the slices. There is no camouflaged design on the part of the court to second-guess the discretionary judgments of the trustees .... It is for the trustees, not judges, to choose between various reasonable alternatives." (See also *Tomlin v. Bd. of Trustees of Const. Laborers* (9th Cir. 1978) 586 F.2d 148.)

Break-in-service rules, providing for cancellation of prior pension credits on the basis of a lapse in covered employment, are a common feature of pension plans, and have been upheld in a variety of contexts. (E.g., *Giler v. Board of Sheet Metal Workers of So. Cal.* (9th Cir. 1975) 509 F.2d 848; *Thurber v. Western Conf. of Teamsters Pens. Plan* (9th Cir. 1976) 542 F.2d 1106; *Wilson v. Board of Trustees, etc.* (9th Cir. 1977) 564 F.2d 1299.) Such a rule may be, and typically is, reasonably related to a legitimate fund purpose, actuarial or otherwise; and to characterize such a rule as providing for a "forfeiture" adds little to analysis.

The Supreme Court of the United States has not addressed the standards applicable to determining this sort of "structural defect" under section 302, and the decisions of the circuit courts of appeal are not entirely consistent. Indeed, as Judge Orrick observed in *Souza v. Trustees of Western Conference, etc., supra,* even the Ninth Circuit's pronouncements in this area "do not lend themselves to easy synthesis." (460 F.Supp. 843, 846.) We are not bound by the views of the Ninth Circuit, however (*Debtor Reorganizers, Inc. v. State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64]), and in my judgment the most useful approach is that of the District of Columbia Circuit Court in *Roark v. Lewis, supra.* The court in that case had under consideration a requirement by the United Mine Workers pension trust that an employees' last regular employment before retirement be with a signatory operator. Observing that such a requirement makes employees

sacrifice an otherwise valid pension claim because they worked a relatively short time for noncontributing operators, the court concluded that the fund applicants had made out a prima facie case as to the requirement's unreasonableness. The court did not on that account hold the requirement invalid, however. Rather, it held that the burden shifted to the trustees to come forward with evidence establishing the reasonableness of the requirement, and (reversing summary judgment which had been granted in favor of the trustees) it remanded for further proceedings to enable such evidence to be presented.

The fiduciary obligation of trustees of a jointly administered pension fund is, in some respects at least, analogous to the duty of fair representation which a union owes the members of its bargaining unit. (See *Roark* v. *Lewis, supra*, 401 F.2d 425, 427.) That duty is "at least as exacting. . .as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates." (*Steele* v. *L. & N. R. Co.* (1944) 323 U.S. 192, 202 [89 L.Ed. 173, 183, 65 S.Ct. 226].) In the arena of industrial relations and worker expectations the right to a pension may well be the equivalent of a "fundamental interest" in the constitutional arena, warranting "strict scrutiny" of the reasons asserted in support of the classification. (Cf. *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) Even the more traditional "rational relationship" test, however, requires in its current formulations, if not a showing of "'fair and substantial relation to the object of the legislation'" (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]), then at least "'a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals'" (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]). Thus, the *Roark* v. *Lewis* view that trustees bear the burden of producing evidence to justify a rule that is prima facie unreasonable goes no further than, and perhaps not even as far as, the analogous equal protection principle inherent in the duty of fair representation.

Unlike my colleagues, I am not prepared to say that the rule complained of herein is arbitrary or unreasonable. There may be reasonable justification for its existence. I am, however, prepared to say that it is prima facie unreasonable, in the sense that it disqualifies for no *apparent* reason persons who have already accumulated the requisite years of service credit, so that further evidence by way of explanation would be

required in order to sustain it. Since it does not appear, and there is no claim, that such evidence was introduced or offered, I conclude *for purposes of this case* that the trustees' burden of proof has not been met, and that appellant was accordingly entitled to judgment. In all other respects, I concur in my colleagues' opinion.

A petition for a rehearing was denied on October 24, 1980, and the following opinion was then rendered:

**ELKINGTON, Acting P. J.**—On its petition for rehearing the Trust urges that, since the trial court's judgment was entered on a Code of Civil Procedure section 631.8 motion it "had no opportunity to present evidence against the claim," and the cause must now be remanded for a continuation of the trial. We disagree.

At the trial's commencement the Fund filed with and handed to the trial court its trial brief delineating its version of the material facts *of the case*. At the same time plaintiff Malone filed her trial brief with the court stating substantially the same facts as the controlling facts *of the case*. Although there was some disagreement as to minor and irrelevant points, none is found in their respective statements of the material and dispositive facts. Neither party sought inclusion of the trial's evidence in the appellate record, but both of the parties' trial briefs *are* so included. It will therefore he presumed that the trial's evidence was not necessary "to a determination of the points on appeal." (See rule 52, Cal. Rules of Court.) And as in the trial court, the parties on appeal have treated the agreed facts of their trial briefs as the facts of the case.

Moreover, on its petition for rehearing, the Trust makes no assertion that the material facts were different, or broader, than those stated by the parties at the trial's commencement.

The Fund will not, under the circumstances, now be permitted to say that there were, or may have been, other and additional facts calling for a result different from that we have reached on the *facts of the case* as stated by it and plaintiff Malone.

Grodin, J., was of the opinion that the petition should be granted.

Respondent's petition for a hearing by the Supreme Court was denied December 17, 1980.